IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES RETIREMENT SYSTEM, individually and an on behalf of all others similarly situatated,<br><br>Plaintiff,<br>v.<br><br>CELERA CORPORATION et al.,<br><br>Defendants. | CASE NO. 5:10-cv-02604 EJD<br><br>**ORDER DENYING CELERA'S MOTION TO DISMISS**<br><br>[Docket Item No. 48] |

Presently before the court is Defendant Celera Corporation's motion to dismiss the Second Amended Consolidated Complaint. See Docket Item Nos. 48. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

Celera is a personalized disease management company. Second Am. Consolidated Compl. ("SAC") ¶ 2. In October 2007, Celera acquired Berkeley HeartLab, Inc. ("BHL") to operate as Celera's Lab Services division. Id. Through BHL, Celera offers clinical laboratory tests and disease management services to healthcare providers for the treatment and prevention of cardiovascular disease. Id. ¶ 3. BHL accounts for more than 60% of Celera's revenue.[1] Id. ¶ 4. During the class period, Blue Cross-insured patients accounted for about 20% of BHL's sales (and thus more than

---

[1] For simplicity, this order will refer to both Celera and its BHL division as simply "Celera."

1
CASE NO. 5:10-cv-02604 EJD
ORDER DENYING MOTION TO DISMISS

1    10% of Celera's total revenue). Id. ¶ 113.

2    From information obtained from confidential witnesses, Plaintiffs allege that in early 2008, Blue Cross began remitting payment for Celera tests to patients rather than reimbursing the company directly. Id. ¶ 45. Because the patients often didn't forward the payment they received from their insurer, Celera's unpaid receivables started to increase. By late 2008, Celera had retained Deloitte & Touche to help collect payments owed by patients. Id. ¶ 46. In January 2009, Celera began billing patients directly. Id. ¶ 47. Patients were upset about the direct billing and collection efforts and complained to their physicians. Id. ¶ 54. Many physicians stopped ordering Celera tests, and sales dropped significantly. Id. ¶ 54–55.

Forty pages of the complaint catalog Defendants' allegedly misleading statements during the class period, which spans 15 months between April 24, 2008, and July 22, 2009. Id. ¶¶ 1, 104–202. The statements include numerous SEC filings, press releases, and statements made on earnings conference calls. Id. In addition to the company's accounting reports, the statements include bullish revenue forecasts and reassurances to investors. By July 22, 2009, Celera's collections problem was largely revealed to the public and its stock's value had dropped by more than half. Id. page 84.

On March 18, 2011, Celera admitted that its accounting statements filed with the SEC during the class period were erroneously prepared, and it issued a restatement showing that much of the bad debt that it had originally recorded for the quarter ending in June 2009 should have been spread out over the statements covering the previous 21 months. Id. ¶¶ 79–82. If it had been correctly recorded, that bad debt would have reduced Celera's stated revenue during the earlier accounting periods. Id. ¶¶ 85–86.

Defendants Jung and Ordoñez received substantial bonuses in 2009 because the company hit certain target financial metrics for the last six months of 2008. Id. ¶¶ 210–212. Notably, the defendants needed Celera to report $93 million in revenue during that period in order to get their bonuses; the company exceeded that target by $52,000. Id. ¶¶ 11, 210–212. The 2011 restatement revealed that the actual revenue number for that period should be been about $79.5 million rather than $93.05 million. Id.

2
CASE NO. 5:10-cv-02604 EJD
ORDER DENYING MOTION TO DISMISS

## II. REQUEST FOR JUDICIAL NOTICE

In support of its motion to dismiss, Celera submits 35 documents of which it requests that the court take judicial notice.[2] Shapiro Decl. Exs. 1–18, 20–36, ECF No. 50.

In ruling on a Rule 12(b)(6) motion to dismiss, courts "must consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

All but three of the exhibits attached to the Shapiro Declaration are mentioned in the complaint and therefore subject to consideration independent of the mechanism of judicial notice. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), overruled on other grounds, Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).

Celera's request is granted with respect to Exhibits 29 and 30; they are noticed for their existence. Celera's request is denied with respect to Exhibit 35.

## III. DISCUSSION

The Supreme Court and Congress have recognized an implied private right of action under Section 10(b) of the Securities Exchange Act of 1934. See Dura Pharms. Inc. v. Broudo, 544 U.S. 336, 341 (2005). Claims under that statute are most frequently brought for alleged violations of Commission Rule 10b-5, which prohibits the making of any "untrue statement of material fact" in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5. A Rule 10b-5 claim has five elements: "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." In re Daou Sys., Inc. Sec. Litig., 411 F.3d 1006, 1014 (9th Cir. 2005).

Section 20(a) of the Securities Exchange Act provides that every person in control of a primary violator of Section 10(b) may be held jointly and severally liable for the Section 10(b) judgment. 15 U.S.C. § 78t(a).

---

[2] Defendants have withdrawn their request for judicial notice of Exhibit 19 to the Shapiro Declaration. Reply ISO RJN at 3:8 n.3.

3
CASE NO. 5:10-cv-02604 EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
For the Northern District of California

1  Defendants move to dismiss the entire SAC on the ground that Plaintiffs have not adequately
2  alleged scienter or loss causation.

### A. Legal Standards

Ordinarily, the standards governing a motion to dismiss are derived from the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 & 9. A complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Rule 9(b) supplements this ordinary standard by insisting that the facts supporting any claim of fraud must alleged with particularity. See, e.g., Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (claims based in fraud "must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud.").

Since the passage of the Private Securities Litigation Reform Act of 1995, however, securities fraud actions are subject to additional pleading requirements significantly more stringent than those applicable to other civil cases. To survive a motion to dismiss, a securities fraud complaint must (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1), and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2) & (b)(3)(A). The "strong inference" of scienter must be "at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007). The court must consider the complaint holistically rather than parsing and analyzing each allegation in isolation. Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 992 (9th Cir. 2009).

### B. Discussion

Defendants do not contest three of the elements of securities fraud: the falsity of their statements, the connection with the sale of securities, and economic loss. They do dispute the elements of scienter and loss causation. These arguments are addressed in turn.

#### 1. Scienter

The statements in the complaint attributed to confidential witnesses are very useful for the purpose of understanding the reimbursement problems that Celera faced during the class period.

Although the confidential witness allegations do not directly show that the Defendants knew their statements were false, the allegations do provide critical background information about the company's operations during 2008 and 2009 that supports the court's finding. The Plaintiffs' failure to recruit a confidential witness with personal knowledge of the Defendants' mental state does not mean the allegations must be disregarded altogether. The court considers them only for what they say about the company's operations at the relevant times.

The magnitude of the declining collections described by the confidential witnesses and disclosed in later corrective disclosures support a strong inference that the Defendants knew about the collections problem during the class period. It is unlikely that the fact that Celera's single largest source of cash income stopped sending payments altogether could have gone unnoticed by the CFO and CEO.

On earnings calls throughout the class period, Defendants repeatedly dismissed analysts' concerns about the declining economy and the collectibility of receivables on the grounds that patients pay very little "out of pocket" and that most costs were "reimbursed" by insurance. In one sense, these statements were true: Blue Cross patients were entitled to roughly the same benefit as customers of other insurance companies. But the statements were also misleading because they failed to disclose the new development that Celera wasn't the entity being reimbursed for a significant percentage of its tests; the patients received the money directly. Investors would have wanted to know that collecting these debts required more of Celera's resources than merely submitting a claim to the insurance company; these collections required Celera to collect from some of its patients individually. Not only does individual collection take more resources, it is also less likely to result in actual receipt of the amount owed. The wording of Defendants' statements on these calls suggests they understood what was going on and were careful to be technically correct. But Defendants had a duty to do more than make technically true statements; they were obliged not to make misleading statements, either.

The allegations related to target-based executive compensation are especially troubling. The fact that the $93 million target value was just barely met—by 0.06%—suggests that some human manipulation may have been involved. It may be that adjustmen of revenue numbers is not always

5
CASE NO. 5:10-cv-02604 EJD
ORDER DENYING MOTION TO DISMISS

nefarious, but the tiny margin combined with the current knowledge that the revenues should have been reported at below $80 million does give rise to a compelling inference that the Defendants, and particularly Ordoñez and Jung, knew that the reported values did not reflect the company's true position.

The most plausible competing (i.e, nonculpable) inference to be drawn from the allegations of the complaint is that all knowledge and concern about the collections problem was confined to whichever Celera department managed billing and finance. But in light of the Defendants' statements on earnings calls, the magnitude of the problem, and the suspiciously narrow margin by which earnings from the second half of 2008 exceeded the amount necessary to trigger executive bonuses, the court finds the inference of scienter to be at least as strong as the inference that the Defendants did not knowingly make misleading statements. There are plausible innocent explanations of each component, to be sure, but collectively they give rise to a cogent and compelling inference that the Defendants knowingly misled the public.

The statutory safe harbor does not apply because the Plaintiffs have adequately alleged that the Defendants knew of problems which they represented to be merely risks or uncertainties. The safe harbor cannot protect cautionary statements made with superior knowledge that some of the potential perils identified have in fact been realized. In re Convergent Techs. Sec. Litig., 948 F.2d 507, 515 (9th Cir. 1991).

### 2. Loss Causation

Allegations of loss causation are not subject to the statutory heightened pleading standard against which scienter allegations are measured; only the ordinary standards applicable to civil complaints apply. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1062 (9th Cir. 2008). "A plaintiff is not required to show that a misrepresentation was the sole reason for the investment's decline in value in order to establish loss causation." In re Daou Sys., 411 F.3d at 1025 (internal quotation omitted).

The complaint states that on two different days in 2009, Celera released information regarding the bad debt problem that it should have included in earlier accounting statements, and that Celera's stock price declined dramatically the day of trading after each announcement Compl.

1 ¶¶ 214–218. Moreover, the complaint cites analyst reports which reported that the disclosure of the facts underlying the fraud allegations contributed to the decline in Celera's stock price. Id. ¶ 216. This is enough to give rise to a plausible inference that the disclosure was partially responsible for the loss. That is all a plaintiff must plead.

### IV.  ORDER

For good cause shown, IT IS HEREBY ORDERED that Celera's motion to dismiss the Second Amended Consolidated Complaint is DENIED. Celera shall file its answer within 14 days of the date of this order.

The court schedules this case for a Case Management Conference on **October 26, 2012 at 10:00 a.m.**  The parties shall file an updated Joint Case Management Statement on or before **October 19, 2012.**

**IT IS SO ORDERED.**

Dated:  September 4, 2012



EDWARD J. DAVILA
United States District Judge

CASE NO. 5:10-cv-02604 EJD
ORDER DENYING MOTION TO DISMISS