IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE<br><br>CELERA CORPORATION<br>SECURITIES LITIGATION<br><br>_____/ | CASE NO. 5:10-cv-02604 EJD<br><br>**ORDER DENYING DEFENDANTS'**<br>**MOTION FOR LEAVE TO FILE MOTION**<br>**FOR RECONSIDERATION**<br><br>[Docket Item No(s). 69] |

Defendants Celera Corporation, Kathy Ordoñez, Joel R. Jung, Ugo DeBlasi and Christopher Hall (hereinafter "Celera") move for leave to file a motion for reconsideration of the court's order denying their motion to dismiss. See Docket Item No. 69. For the reasons set forth below, the motion is denied.

Civil Local Rule 7-9(b) prescribes the limited grounds on which a party may move for reconsideration of a court's earlier order. They are:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

1
CASE NO. 5:10-cv-02604 EJD
ORDER DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

(3) A manifest failure by the court to consider material facts or dispositive legal arguments which were presented to the court before such interlocutory order.

Celera's present motion makes two arguments why the court should revisit its Order Denying Celera's Motion to Dismiss. First, Celera contends that the court applied the wrong standard in determining that the safe harbor provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA") did not protect its forward-looking statements. Second, Celera maintains that the court relied on an incorrect understanding of the Celera executives' bonus structure in finding that the plaintiffs raised the strong inference of scienter required to overcome Celera's motion to dismiss. These arguments are addressed in turn.

**I.    PSLRA Safe Harbor**

The PSLRA exempts issuers of securities from liability based on forward-looking statements that are identified as such and "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1).

In denying Celera's motion to dismiss, this court relied on In re Convergent Technolgies Securities Litigation, 948 F.2d 507, 515 (9th Cir. 1991), and determined that the PSLRA safe harbor does not apply to any of the statements identified in the complaint:

> The statutory safe harbor does not apply because the Plaintiffs have adequately alleged that the Defendants knew of problems which they represented to be merely risks or uncertainties. The safe harbor cannot protect cautionary statements made with superior knowledge that some of the potential perils identified have in fact been realized.

In support of reconsideration, Celera argues that Convergent is not good law because it was decided before the enactment of the PSLRA and its safe harbor provision. Celera maintains that under the safe harbor provision of the PSLRA and subsequent Ninth Circuit decisions, false forward-looking statements do not give rise to liability, even if made by a speaker with actual knowledge of the falsity, so long as the statements are accompanied by meaningful cautionary language.

Since the enactment of the PSLRA, courts and commentators have struggled with the question of whether the statute's safe harbor creates a "license to lie" to shareholders. See Ann

Morales Olazábal, False Forward-Looking Statements and the PSLRA's Safe Harbor, 86 Ind. L.J. 595 (2011). Neither the case law nor the statute itself is particularly helpful in defining what makes cautionary language "meaningful." See Asher v. Baxter Int'l, 377 F.3d 727, 729 (7th Cir. 2004) (Easterbrook, J.) ("The fundamental problem is that the statutory requirement of 'meaningful cautionary statements' is not itself meaningful.")

Although the Ninth Circuit has not considered the issue en banc, a recent panel decision holds that if a forward-looking statement is identified as such and is accompanied by meaningful cautionary statements, then the speaker's state of mind is not relevant to the determination of whether the statement falls within the safe harbor. In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010). Celera cited Cutera in its motion to dismiss.

Here, the court found that Celera's statements about Blue Cross Blue Shield's reimbursement practices were "technically correct" but nonetheless still "misleading." Celera's position - supported by Cutera - is that even misleading statements do not generate liability so long as they are forward-looking and accompanied by meaningful cautionary language. But the failure to alert investors to the reimbursement problem was not forward-looking; rather, it was an omission of a historical fact. The safe harbor applies "to forward-looking statements only, and not to material omissions or misstatements of historical fact." In re Complete Mgmt. Inc. Sec. Litig., 153 F. Supp. 2d 314, 340 (S.D.N.Y. 2001); see Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 990 (9th Cir. 2008). The financial projections were too closely related to this omitted, material, and historical fact to say for certain at the motion to dismiss stage that they warrant safe harbor protection.

Because these legal arguments would not have been dispositive of the issue, leave on that basis is denied.

**II.     Executives' Bonuses as Evidence of Scienter**

Celera also argues that this Court misinterpreted the facts surrounding the company's executive bonus payouts. It contends that a proper understanding of the company's incentive compensation plan undermines the determination that the plaintiffs raised a "strong inference" of scienter.

In the Order Denying Celera's Motion to Dismiss, this court found that:

3
CASE NO. 5:10-cv-02604 EJD
ORDER DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

> Defendants Jung and Ordoñez received substantial bonuses in 2009 because the company hit certain target financial metrics for the last six months of 2008. Notably, the defendants needed Celera to report $93 million in revenue during that period in order to get their bonuses; the company exceeded that target by $52,000. The 2011 restatement revealed that the actual revenue number for that period should [have] been about $79.5 million rather than $93.05 million.

The court's determination that the complaint raises the requisite "strong inference of scienter" was based in part upon that finding. The court noted:

> The allegations related to target-based executive compensation are especially troubling. The fact that the $93 million target value was just barely met-by 0.06%-suggests that some human manipulation may have been involved. It may be that adjustmen[t] of revenue numbers is not always nefarious, but the tiny margin combined with the current knowledge that the revenues should have been reported at below $80 million does give rise to a compelling inference that the Defendants, and particularly Ordoñez and Jung, knew that the reported values did not reflect the company's true position.
>
> . . . [I]n light of the Defendants' statements on earnings calls, the magnitude of the problem, and the suspiciously narrow margin by which earnings from the second half of 2008 exceeded the amount necessary to trigger executive bonuses, the court finds the inference of scienter to be at least as strong as the inference that the Defendants did not knowingly make misleading statements.

These findings were based upon allegations found at paragraphs 210 through 212 of the Second Amended Complaint referencing certain Celera proxy statements.

In support of reconsideration, Celera now argues that the SEC filings on which those allegations were based - which Celera submitted in connection with the briefing on its motion to dismiss - tell a different story.

The April 10, 2009 proxy statement shows that at the end of 2008, Ordoñez and Jung were provisionally due bonuses of 95% and 45% of their base salaries, respectively. Those amounts came out to $330,326 for Ordoñez and $73,644 for Jung. Those values were then multiplied by "business" and "personal" modifiers. The "business modifier" was calculated by averaging (1) actual revenue, as a percentage of a target revenue value ($93M); (2) actual EBIT (earnings before interest and taxes), as a percentage of a target EBIT;[1] and (3) "business goals (including quality systems and

---

[1] EBIT (earnings before interest and taxes) = revenue - operating expenses + non-operating income.

4
CASE NO. 5:10-cv-02604 EJD
ORDER DENYING DEFENDANTS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

1  controls, product development and commercialization marketing, and activities to support the
2  separation from Applied Biosystems (now Life Technologies))," expressed, somehow, as a
3  percentage.[2]  The personal modifier was assigned at the board's discretion.

4  Those filings, Celera contends, show that the revenue "target" value did not serve as a "trigger" for executive bonuses. Rather, if actual revenues came in below the target value by some percent, a portion of the bonuses would be adjusted by the same percentage. Celera argues that the sliding scale bonus structure undermines the finding that the defendants had a financial motive to adjust the figures, since they would still receive most of the bonus even if they reported financial numbers lower than the target value.

That is only part of the story. First, the fact remains that the initially reported revenue cleared the target by the tiniest of margins - 0.06%.  In addition, a full third of the bonus multiplier depended on EBIT. The reported value of $0.1M exceeded the target value of negative $1.6M, and Ordoñez and Jung got full bonus credit (i.e., 100% of the assigned 33%) for meeting the goal. Because EBIT depends on revenue, if reported revenues had been closer to their true value, EBIT would have been different also, and the EBIT target might have been missed. The filing does not reveal how much credit (if any) the board would have given for missing the EBIT target, but since it gave 100% for making the goal, it might well have given 0% for missing it.  These facts still support a cogent inference that the numbers were purposefully adjusted to get a full bonus and meet all pre-set target figures.

The court was imprecise in its earlier order in finding that $93 million in revenue would "trigger" executive bonuses, and the Court did not fully articulate its consideration of material facts related to the bonus structure that were properly presented in support of the motion to dismiss.  But because this more complete understanding of the facts would not have changed the outcome, leave to file a reconsideration motion on this ground is denied.

//
//

---

[2] The average was very slightly weighted. Factors (1), (2), and (3) were weighted 33%, 33%, and 34%, respectively. 2009 Proxy Statement at 21.

### III. Conclusion and Order

Celera's motion for leave to file a motion for reconsideration is DENIED.

**IT IS SO ORDERED.**

Dated: September 3, 2013


EDWARD J. DAVILA
United States District Judge