UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re CELERA CORPORATION SECURITIES LITIGATION | Case No. 5:10-CV-02604-EJD<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br>Re: Dkt. No. 167 |

Lead Plaintiff Washtenaw County Employees' Retirement System ("Lead Plaintiff") filed this class action for violations of federal securities laws against Defendants Celera Corporation ("Celera"), Celera's Chief Executive Officer Kathy Ordoñez, Celera's former Chief Financial Officers Joel R. Jung and Ugo DeBlasi, Celera's Chief Business Officer of Berkeley HeartLab, Inc. ("BHL") Christopher M. Hall (collectively, "Celera Defendants"), and PricewaterhouseCoopers LLP ("PricewaterhouseCoopers") (collectively, "Defendants"). Presently before the Court is Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement. Defendants do not oppose the motion. Having reviewed the parties' briefing and heard oral argument, Lead Plaintiff's motion is GRANTED for the reasons explained below.

## I.  BACKGROUND

### A.  Factual Background

This is a securities class action on behalf of all persons who purchased or otherwise acquired the common stock of Celera between April 24, 2008 and July 22, 2009 (the "Class Period"). Dkt. No. 112, Third Am. Compl. at ¶ 1. Celera is a publicly-traded healthcare business headquartered in Alameda, California that delivers personalized disease management. Id. at ¶ 2.

Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

In October 2007, Celera acquired BHL for approximately $195 million. Id. at ¶ 3. BHL operates Celera's Lab Services segment, which offers clinical laboratory tests and disease management services to healthcare providers to help physicians improve cardiovascular disease treatment and provide cardiovascular disease prevention services. Id. BHL is Celera's most important division and accounted for over 60 percent of Celera's total reported revenue during the Class Period. Id. at ¶ 4.

Lead Plaintiff alleges that Defendants failed to account for a significant portion of BHL's accounts receivable that were critically impaired and largely "uncollectible," as required by Generally Accepted Accounting Principles and U.S. Securities and Exchange Commission ("SEC") rules. Id. at ¶ 5. Due to the improper accounting of Celera's bad debts, Celera's financial results between March 31, 2008 and March 28, 2009 were materially overstated. Id. Consequently, Celera was forced to record a $20.1 million bad debt charge in 2009. Id.

During the Class Period, the Celera Defendants allegedly made materially false and misleading statements to investors regarding Celera's business and financial results. Id. at ¶ 6. These statements were made in Celera's financial statements filed with the SEC, in press releases, and during investor conference calls regarding Celera's reported net revenue, earnings, bad debt, and accounts receivable. Id. at ¶¶ 79, 87, 154-66, 177, 182, 185. Even when Celera made a partial disclosure about the bad debt in February 2009, it allegedly continued the fraud by failing to disclose the magnitude of its bad debt problems and continuing to make statements in SEC filings, press releases, and conference calls that concealed its bad debt and internal controls. Id. at ¶¶ 168-76, 187-95, 260. Lead Plaintiff alleges that Celera's CEO and CFOs falsely attested in certifications pursuant to the Sarbanes-Oxley Act of 2002 that Celera maintained effective internal controls over financial reporting, and Celera's outside auditor PricewaterhouseCoopers issued clean audit reports for Celera without accounting for a significant change in circumstances as required by Generally Accepted Accounting Standards. Id. at ¶¶ 194-97, 215-20, 226.

The Class Period ends on July 22, 2009, when Celera announced that its bad debt was

2
Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

worse than previously reported. Id. at ¶ 262. Celera admitted that it expected to record significant charges for bad debt expense and that it expected to have 2009 revenues significantly below its present guidance. Id. The news resulted in a drop of $1.91 per share on Celera stock, closing at $5.83 per share on July 23rd—a one-day decline of nearly 25 percent. Id. at ¶¶ 24, 205, 262. On March 18, 2011, Celera restated its financial results for the Class Period. Id. at ¶ 5. The restatement included an admission that most (82 percent) of the $20.1 million bad debt charge that was recorded at the end of the Class Period should have been recorded throughout the Class Period, and that Celera improperly misclassified $27.7 million of its bad debt expense during the Class Period. Id. at ¶¶ 5, 28, 89, 97, 135.

**B. Procedural History**

Plaintiff commenced the instant action on June 14, 2010. See Dkt. No. 1. In September 2010, the court appointed Washtenaw County Employees' Retirement System as Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP as Lead Counsel. See Dkt. No. 21. In October 2010, Lead Plaintiff filed a Consolidated Amended Complaint for violation of federal securities laws. See Dkt. No. 24. In November 2010, Celera filed a motion to dismiss, which was fully briefed and set for hearing when Celera issued a restatement of its financial results on March 18, 2011. See Dkt Nos. 29, 33, 34. In May 2011, pursuant to a stipulation and order, Lead Plaintiff filed a Second Amended Consolidated Complaint for violation of federal securities laws. See Dkt. Nos. 40, 45. In June 2011, Celera filed a motion to dismiss, which was denied. See Dkt. Nos. 48, 65. In October 2012, Celera filed an answer to the complaint, which was subsequently amended. See Dkt. Nos. 73, 90.

During discovery, Lead Plaintiff sought to file an amended complaint to add PricewaterhouseCoopers as a defendant. See Dkt. Nos. 102, 103. The court granted Lead Plaintiff's motion for leave to file an amended complaint, and on October 4, 2013, Lead Plaintiff filed a Third Amended Consolidated Complaint. See Dkt. Nos.110, 112.

The operative complaint—Third Amended Consolidated Complaint for Violation of the

3

Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Federal Securities Laws—sets forth the following claims: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and SEC Rule 10b-5 against all Defendants; (2) violation of Section 20(a) of the 1934 Act against the Celera Defendants; and (3) violation of Section 10(b) of the 1934 Act and SEC Rule 10b-5 against Defendant PricewaterhouseCoopers.[1] Third Am. Compl. at 106-08.

In October 2013, Lead Plaintiff filed its Motion for Class Certification. See Dkt. No. 113. The following month, the Celera Defendants filed an answer to the operative complaint, and PricewaterhouseCooopers filed a motion to dismiss. See Dkt. Nos. 129, 134. The court terminated the motion to dismiss in light of the instant Motion for Preliminary Approval. See Dkt. No. 168.

In February 2014, the court granted Lead Plaintiff's motion and certified the following class:

> All persons or entities who purchased or otherwise acquired Celera common stock from April 24, 2008 through July 22, 2009 (the "Class Period") and who were damaged thereby.[2]

Dkt. No. 146 at 3.

In late May 2014, the parties reached an agreement to settle the case, and on August 28, 2014, the parties executed its proposed settlement agreement. Mot. at 8; Dkt. No. 166. On August 29, 2014, Lead Plaintiff filed this Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 167.

A hearing on the Motion for Preliminary Approval was held on November 10, 2014. See Dkt. No. 171. At the hearing, the Court stated that there was insufficient information to determine

---

[1] In the Third Amended Complaint, the heading states: "For Violation of Section 10(b) of the 1945 Act and SEC Rule 10b-5 Against Defendant [PricewaterhouseCoopers]." Third Am. Compl. at 107. Given the allegations stated under that heading, the court assumes that Lead Plaintiff's heading refers to the 1934 Act.

[2] Excluded from the Class are Defendants and their family members, the officers and directors of the Company, at all relevant times, members of the immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

4
Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

the reasonableness of the proposed settlement agreement. Subsequently, the Court issued an order requesting additional information and supporting documentation on the estimated class size, an itemized listing of how the $24,750,000 settlement fund would be spent, the estimated amount per share that claimants would receive, information regarding the *cy pres* recipient, a detailed notice plan, and a "mock-up" of the Notice, Summary Notice, and Claim Form. See Dkt. No. 174. Lead Plaintiff submitted the requested documents on December 19, 2014. See Dkt. No. 177.

## II. LEGAL STANDARD

When considering whether to give approval to a proposed class action settlement, Federal Rule of Civil Procedure 23(e) "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." In re Mego Fin. Corp. Litig., 213 F.3d 454, 458 (9th Cir. 2000). The settlement must be taken as a whole and examined for overall fairness. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). In determining whether the proposed settlement meets this standard, the court does not have the ability "to delete, modify, or substitute certain provisions," but "[t]he settlement must stand or fall in its entirety." Id. (internal quotations omitted). The approval process entails two steps: (1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class. See Manual for Complex Litig. § 21.632 (4th ed. 2004). Preliminary approval is appropriate "where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." Newberg on Class Actions § 13:15 (5th ed. 2014).

## III. TERMS OF THE PROPOSED SETTLEMENT

The complete terms of the proposed settlement are set forth in the Settlement Agreement, signed by the parties and executed on August 28, 2014. See Stipulation of Settlement ("Settlement Agreement"), Dkt. No. 166. Its key provisions are as follows:

**Estimated Class Size.** While the class size cannot be definitely ascertained because the vast majority of class members hold their securities through a broker, bank, or other financial institution, Lead Plaintiff estimates that the class will consist of approximately 50,000 class

5
Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

members, and will cover approximately 55 million shares.  Dkt. No. 177 at 2-3.

**Settlement Fund.**  The Settlement Agreement provides for a settlement fund of $24,750,000, of which $23 million will be paid by Celera and $1.75 million will be paid by PricewaterhouseCoopers.  Settlement Agreement ¶ 2.1.  The Settlement Fund will be distributed in the following way:

- Attorneys' Fees: $6,187,500 (25% of the Settlement Fund)
- Attorneys' Litigation Costs: $225,134.90
- Notice Administration and Claims Processing: $234,486
- Amount of Distribution to Class Members: $18,102,879.10

Dkt. No. 177 at 2-3.

**Individual Distribution:** The amount per share that claimants will receive depends on the number of valid claims submitted, the amount of shares those claims represent, and the dates of the purchases, acquisitions and sales of the shares represented by those claims.  Dkt. No. 177 at 3.  Nonetheless, Lead Plaintiff estimates that based on the approximately 55 million shares that will be covered by the Settlement Agreement and the $18,102,879.10 available for distribution, the average distribution will be approximately $0.33 per share of common stock if all of the eligible shares participate.  Id. at 3-4.  Generally, however, the claims rate range between 20 and 30 percent.  Id. at 4.  Thus, assuming that there is a 30 percent participation rate, the estimated amount claimants will receive will be approximately $1.10 per share.  Id.

**Claims Process.**  In order to be an "authorized claimant," the claimant must submit a completed proof of claim form ("Claim Form") to the claims administrator within 90 days of the notice mailing date.  Id. at ¶ 5.4.  The six-page Claim Form consists of instructions on completing and mailing the Claim Form, a statement on submission to jurisdiction of the court, and a release that must be signed and dated.  Dkt. No. 178, Declaration of Peter Crudo ("Crudo Decl."), Exh. A.

Part I of the Claim Form asks for the claimant's name, social security number or taxpayer identification number, phone number, email address, mailing address, and identification of the

6

Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1 purchase of record if different from the beneficial purchaser of the Celera common stock. Id. Part
2 II of the Claim Form asks for information on transactions of Celera common stock, including: the
3 number of shares of common stock held on April 23, 2008; information on purchases or
4 acquisitions of Celera common stock between April 24, 2008 and October 20, 2009; information
5 of shares acquired through an acquisition or merger; information on the sale of Celera common
6 stock between April 24, 2008 and October 20, 2009; the number of shares of common stock held
7 on July 22, 2009; and the number of shares of common stock held on October 20, 2009. Id. The
8 last page of the Claim Form must be signed and dated. Id. The Claim Form, along with
9 supporting documentation, must be mailed to the claims administrator in San Rafael, California or
10 be submitted online. Id.

*Cy Pres* **Recipient:** Any residual funds left in the Settlement Fund after distributions have been made to Class Members will be distributed to the Bay Area Legal Aid ("BALA"). Dkt. No. 177 at 4-5. The BALA is a non-profit organization that provides free civil legal services to the low-income residents of the San Francisco Bay Area who would otherwise not be able to afford such representation. Id. at 5. The Claims Administrator estimates that Class Members will likely receive over 99 percent of the Net Settlement Fund, thus BALA will receive an amount less than $5,000 or less than one percent of the Net Settlement Fund. Id. at 6.

**Release of Claims.** Under the Settlement Agreement, Lead Plaintiff and each class member releases all claims against Defendants. Settlement Agreement ¶¶ 4.1-4.3.

**IV. DISCUSSION**

**A. Preliminary Approval of Lead Plaintiff's Proposed Settlement Agreement**

The court must examine the proposed settlement and make a preliminary finding of fairness. Fed. R. Civ. P. 23(e). A settlement may be approved only based on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Relevant factors for the court to consider include: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

7
Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the absence of collusion between the parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458. "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625-26 (9th Cir. 1982).

### 1. Strength of Lead Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

The proposed settlement was mediated by retired Judge Layn Phillips. Mot. at 10. Lead Plaintiff argues that the strength and weaknesses of the parties' respective positions were fully vetted during the mediation process. Id. It contends that it carefully considered and evaluated the relevant legal authorities, the evidence adduced to support the claims asserted, the likelihood of prevailing, the risk, expense and duration of continued litigation, and the likely appeals and subsequent proceedings if Lead Plaintiff were to prevail at trial. Id. Lead Plaintiff further argues that it recognizes the significant risk and expense that is necessary to pursue these claims through trial. Id. at 11. Among the issues that would be contested at trial are proof of loss causation and the amount of damages incurred by class members, which would be difficult to prove. Id. at 11-12.

This court agrees that the mediation process must have assisted the parties to gain a better understanding of their respective strengths and weaknesses to litigate this case. As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial. Moreover, given the four years of litigation already underway, Lead Plaintiff would risk recovering nothing without a settlement. Thus, these factors weigh in favor of settlement.

### 2. Risk of Maintaining Class Action Status Throughout Trial

Class certification was granted by this court on February 25, 2014. See Dkt. No. 146. While a class can be decertified, the risk of this occurring is minimal since Defendants did not

8
Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

oppose Lead Plaintiff's motion for class certification. See Dkt. No. 131. On this front, Lead Plaintiff would not encounter significant risk in pursuing this litigation as a class action. Thus, this factor weighs marginally against settlement because in the absence of the settlement, it is unlikely that class would be de-certified.

### 3. The Amount Offered in Settlement

The Settlement Agreement provides for a settlement fund of $24,750,000. Settlement Agreement at ¶ 2.1. Lead Plaintiff argues that the proposed settlement represents approximately 17 percent of its estimated damages of approximately $143 million, which exceeds the median recovery as a percentage of estimated damages in similar cases. Mot. at 12. Moreover, Lead Plaintiff contends that its plan of allocating settlement proceeds is fair and reasonable because it provides an equitable basis for allocating the funds. Id. at 13. The plan was developed by Lead Plaintiff's counsel with the assistance of a damages expert, and reflects the theories of causation and damages that would have been presented at trial. Id. A claimant's recovery under this plan will depend on factors such as the number of valid claims filed by other class members, the number of shares of Celera common stock that were purchased or acquired during the class period, and the time period in which the claimant bought, acquired, and sold the shares. Id. at 14.

Approximately $18,102,879.10, or 73 percent, of the Settlement Fund will be distributed to Class Members. Depending on the number of claimants, the amount an individual claimant may receive may be an average of $0.33 per share or a high of $1.10 per share. Collectively, this is a significant amount of actual money from the settlement fund that will be distributed to individual class members. Thus, this factor weighs in favor of settlement.

### 4. The Extent of Discovery Completed and the Stage of the Proceedings

In its motion, Lead Plaintiff states that Celera began to produce documents pursuant to Lead Plaintiff's first request for the production of documents in October 2012. Mot. at 5. Lead Plaintiff has issued third party subpoenas to Celera's outside auditor, financial consultants, financial analysts, and medical insurance companies. Id. In October 2013, Celera served its

1  responses and objections to Lead Plaintiff's first set of interrogatories, and Celera supplemented
2  its responses in accordance with Federal Rule of Civil Procedure 33. Id. at 6.

3  It appears that the parties have gone through two years of discovery, and have obtained adequate information about the case through its class certification and mediation processes. Given the extent of discovery completed, the parties seem to sufficiently understand the issues involved and their respective strengths and weaknesses to decide that settlement would be appropriate. Thus, this factor weighs in favor of settlement.

### 5. The Experience and Views of Counsel

Lead Plaintiff argues that its counsel has significant experience in securities and other complex class action litigation, and has negotiated numerous class action settlements throughout the country. Id. Given that the court appointed class counsel as Lead Counsel, it does not doubt that Lead Counsel has the necessary expertise to litigate this case and reach settlement. See Dkt. No. 21. Thus, this factor weighs in favor of settlement.

### 6. Absence of Collusion Between Parties

Lead Plaintiff argues that the proposed settlement was the product of arm's length negotiations between the parties with experienced counsel who understood the strengths and weaknesses of their respective positions. Mot. at 10.

In the Settlement Agreement, the parties agreed that Defendants shall not have a reversionary interest in the Net Settlement Fund. Settlement Agreement ¶ 5.7. As to attorneys' fees, the Settlement Agreement does not provide that any unawarded attorneys' fees will be reverted to Defendants. See id. at § 6. Thus, it appears that unawarded attorneys' fees will be part of the Net Settlement Fund to be distributed to Class Members. These terms, combined with the parties' efforts in reaching a settlement through a mediation process, indicates the absence of collusion between the parties. Thus, this factor weighs in favor of settlement.

### 7. Conclusion

In sum, the aforementioned factors weigh in favor of settlement. Accordingly, the

Settlement Agreement is deemed to be fair, reasonable, and adequate.

**B. Class Notice**

Affected natural persons are entitled to due process, thus they must be given notice of the proposed settlement and their rights, including the right to exclude themselves and the opportunity to be heard. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12 (1985). The Ninth Circuit has stated that "[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal quotations omitted).

Lead Plaintiff has provided its proposed eight-page Notice and one-page Summary Notice. See Crudo Decl., Exhs. A, B. The Notice Plan provides for the class administrator to initially mail the Notice and Proof of Claim form by first-class mail to those persons and entities identified by Celera's transfer agent as potential class members, and to brokers who may be nominee holders. Dkt. No. 177 at 6. The Notice and Proof of Claim will also be published by the Depository Trust Corporation on its Legal Notice System, and will be emailed to approximately 450 institutions that monitor securities class actions for their investor clients. Id. at 7. In addition, the Summary Notice will be published in the Investor's Business Daily national edition, which is a national newspaper read by securities investors and investment professionals, and will be posted on the Business Wire. Id. This Notice Plan is expected to reach more than 95 percent of the investors that are potential class members. Id. Lastly the claims administrator will maintain a settlement website where key documents will be kept. Id.

Given the sample Notice, Summary Notice, and Claim Form provided by Lead Plaintiff, as well as the detailed Notice Plan, notice to the class is found to be satisfactory and meets due process.

**C. Appointment of Class Administrator**

Lead Plaintiff requests the appointment of Gilardi & Co. LLC ("Gilardi") as Claims

1 Administrator to supervise and administer the notice procedure, and process the claims. Dkt. No. 177 at 1 n.1. The Court hereby approves the appointment of Gilardi as Class Administrator.

## IV. CONCLUSION

In light of the preceding discussion, the Motion for Preliminary Approval of Class Action Settlement is GRANTED as follows:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).
2. Lead Plaintiff Washtenaw County Employees Retirement System is appointed as adequate class representative for settlement purposes only.
3. Robbins Geller Rudman & Dowd LLP is appointed as lead counsel for the settlement class pursuant to Federal Rule of Civil Procedure 23(g).
4. Gilardi & Co. LLC is appointed as claims administrator.
5. The Notice Plan and the content and form of Notice of Proposed Settlement of Class Action, Proof of Claim and Release Form, Summary Notice, and cover letter for nominee holders as set forth in Lead Plaintiff's supplemental briefing filed December 19, 2014 are approved. See Docket Nos. 178, Crudo Decl.; 178-1, Exh. A; 178-2, Exh. B; 178-3, Exh. C.
6. The Settlement Agreement and all relevant documents shall be posted on the Claims Administrator's website by **April 6, 2015**.
7. The Summary Notice shall be published by **April 9, 2015**.
8. The Notice and Proof of Claim Form shall be mailed to Class Members by **April 19, 2015**.
9. Class Counsel may file brief(s) requesting final approval of the Settlement Agreement, Fee Award, and Incentive Award by **April 29, 2015**.
10. The deadline for requesting exclusion from the class and deadline for filing objections shall be **May 14, 2015**.
11. Class Counsel may file a reply brief to any objections by **June 24, 2015**.

12

Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   12.   The deadline for submitting the Proof of Claim Form shall be **June 28, 2015**.

2   13.   A hearing on the final approval of class action settlement shall be held before this court on **July 16, 2015 at 9:00 a.m.** at the United States District Court, Northern District of California, San Jose Division, 280 South 1st Street, Courtroom 4, 5th Floor, San Jose, California 95113.

**IT IS SO ORDERED**.

Dated: March 31, 2015



EDWARD J. DAVILA
United States District Judge

13
Case No. 5:10-CV-02604-EJD
ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT