ROBBINS GELLER RUDMAN
  & DOWD LLP
WILLOW E. RADCLIFFE (200087)
AELISH M. BAIG (201279)
SUNNY S. SARKIS (258073)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
willowr@rgrdlaw.com
aelishb@rgrdlaw.com
ssarkis@rgrdlaw.com

Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| In re CELERA CORP. SEC. LITIG. | ) | No. 5:10-cv-02604-EJD(HRL) |
| | ) | |
| | ) | CLASS ACTION |
| This Document Relates To: | ) | |
| | ) | NOTICE OF MOTION AND MOTION FOR |
| ALL ACTIONS. | ) | FINAL APPROVAL OF CLASS ACTION |
| | ) | SETTLEMENT AND PLAN OF |
| | ) | ALLOCATION OF SETTLEMENT |
| | | PROCEEDS AND MEMORANDUM OF |
| | | POINTS AND AUTHORITIES IN SUPPORT |
| | | THEREOF |

DATE:     July 16, 2015
TIME:     9:00 a.m.
CTRM:   The Honorable Edward J. Davila

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................................1

II. LITIGATION HISTORY .........................................................................................4

III. THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
ACTION SETTLEMENTS ......................................................................................8

IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE..........................................................................................................10

    A. The Settlement Enjoys a Presumption of Reasonableness Because It Is the
Product of Arm's-Length Settlement Negotiations .............................................10

    B. The Settlement Amount Strongly Supports Approval ...........................................11

    C. The Strength of Lead Plaintiff's Case When Balanced Against the Risk,
Expense, Complexity, and Likely Duration of Further Litigation Supports
Approval of the Settlement ...................................................................................13

        1. The Risks of Proving Liability.................................................................14

        2. The Risks of Proving Loss Causation and Damages ................................18

        3. The Complexity, Expense, and Likely Duration of the Litigation
Justifies the Settlement ............................................................................20

    D. Sufficient Information Existed to Determine the Propriety of Settlement ...........22

    E. The Recommendations of Experienced Counsel After Extensive Litigation
and Arm's-Length Settlement Negotiations Favor the Approval of the
Settlement ...........................................................................................................23

    F. Reaction of the Class Supports Approval of the Settlement.................................23

V. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................24

VI. CONCLUSION......................................................................................................25

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF- 5:10-cv-02604-EJD(HRL)   - i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)...............................................25

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................13

*Brotherton v. Cleveland*,
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................24

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ...............................................8

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..............................................25

*DSAM Global Value Fund v. Altris Software, Inc.*,
    288 F.3d 385 (9th Cir. 2002) ...............................................14

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..........................................................18

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980),
    *aff'd*, 661 F.2d 939 (9th Cir. 1981).............................9, 11, 21

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975).................................................13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................10, 24

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. CV 04-2147-PHx-JAT, 2008 U.S. Dist. LEXIS 61995
    (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971,
    2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010) ......................18

*In re Apple Computer Sec. Litig.*,
    886 F.2d 1109 (9th Cir. 1989) ..............................................14

*In re BankAtlantic Bancorp, Sec. Litig.*,
    No. 07-61542-CIV-UNGARD, 2011 U.S. Dist. LEXIS 48057
    (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713 (11th Cir. 2012).............19

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)               - ii -

1

2                                                                          **Page**

3

*In re Chicken Antitrust Litig. Am. Poultry*,
4       669 F.2d 228 (5th Cir. 1982) ..............................................25

5    *In re Delphi Corp. Sec.*,
6       248 F.R.D. 483 (E.D. Mich. 2008) ..................................2, 16

7    *In re Flag Telecom Holdings*,
        No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702
8       (S.D.N.Y. Nov. 8, 2010) ....................................................13

9    *In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
        142 F.R.D. 588 (S.D.N.Y. 1992) .......................................25
10

11   *In re Ikon Office Solutions, Inc.*,
        194 F.R.D. 166 (E.D. Pa. 2000) .............................13, 20, 25

12   *In re Mego Fin. Corp. Sec. Litig.*,
13      213 F.3d 454 (9th Cir. 2000) ............................................22

14   *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
        No. 02 MDL 1484(JFK), 2007 U.S. Dist. LEXIS 9450
15      (S.D.N.Y. Feb. 1, 2007) ....................................................11

16   *In re Mfrs. Life Ins. Co. Premium Litig.*,
        No. MDL 1109, 1998 U.S. Dist. LEXIS 23217
17      (S.D. Cal. Dec. 21, 1998)..................................................20

18
     *In re Omnivision Techs.*,
19      559 F. Supp. 2d 1036 (N.D. Cal. 2007) .........................8, 23

20   *In re Oracle Corp. Sec. Litig.*,
        No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
21      (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010)................18

22   *In re Pac. Enters. Sec. Litig.*,
23      47 F.3d 373 (9th Cir. 1995) ............................................8, 9

24   *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
        460 F.3d 1217 (9th Cir. 2006) ...........................................8
25

26   *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
        148 F.3d 283 (3d Cir. 1998).............................................21

27   *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
28      396 F. Supp. 2d 1178 (D. Colo. 2004)...............................17

1022653_1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 5:10-cv-02604-EJD(HRL)              - iii -

Page

*In re Software Toolworks Inc.*,
   50 F.3d 615 (9th Cir. 1994) ...................................................................................15

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................16

*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007).....................................................................18, 19

*In re Veeco Instruments Sec. Litig.*,
   No. 05 MDL 0165 (CM), 2007 U.S. Dist. LEXIS 85629
   (S.D.N.Y. Nov. 7, 2007) .........................................................................................19

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...........................................................................13

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541
   (N.D. Cal. Aug. 2, 2011)..........................................................................................10

*In re Xcel Energy, Inc.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)........................................................................3

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
   (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ...........................11

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ...................................................................................9

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) .........................................................................20

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
   797 F.2d 799 (9th Cir. 1986) .....................................................................................8

*N.M. State Inv. Council v. Ernst & Young LLP*,
   641 F.3d 1089 (9th Cir. 2011) .................................................................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)..................................................................10, 13, 23

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................... *passim*

1022653_1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 5:10-cv-02604-EJD(HRL)        - iv -

**Page**

*Phillips v. Scientific-Atlanta, Inc.*,
   489 Fed. App'x. 339 (11th Cir. 2012) ...................................................................19

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ............................................................................17

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA, 2013 U.S. Dist. LEXIS 100275
   (C.D. Cal. July 9, 2013) ......................................................................................13

*Reynolds v. Beneficial*,
   288 F.3d 277 (7th Cir. 2002) ..............................................................................21

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) ..........................................................................19

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................10, 11, 23

*Smith v. Dominion Bridge Corp.*,
   No. 96-7580, 2007 U.S. Dist. LEXIS 26903
   (E.D. Pa. Apr. 11, 2007) ......................................................................................16

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom.*
   *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
   636 F.3d 235 (6th Cir. 2011) ..............................................................................24

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................................9

*Util. Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) .................................................................................8

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) .................................................................................8

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993).....................................................................25

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910)...............................................................................................8

1022653_1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 5:10-cv-02604-EJD(HRL)                    - v

**Page**

*Woo v. Home Loan Grp., L.P.*,
   No. 07-CV-202 H (POR), 2008 U.S. Dist. LEXIS 65144
   (S.D. Cal. Aug. 25, 2008) ......................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b)...................................................................................4, 13, 14
   §78t(a) ..............................................................................................4
   §78u-4(b)(3)(B)...............................................................................5, 7

Federal Rules of Civil Procedure
   Rule 1 ...........................................................................................3, 8
   Rule 23 ............................................................................................25
   Rule 23(e)......................................................................................1, 9
   Rule 33 ..............................................................................................6

17 C.F.R.
   §240.10b-5 ................................................................................4, 13, 18

**SECONDARY AUTHORITIES**

Dr. Renzo Comolli & Svetlana Starykh, *Recent Trends
in Securities Class Action Litigation: 2014 Full-Year Review*
(NERA Jan. 20, 2015)......................................................................12

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlements 2014 Review and Analysis*
(Cornerstone Research 2015)...........................................................12

1022653_1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT - 5:10-cv-02604-EJD(HRL)    - vi -

1  TO:     ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

2          PLEASE TAKE NOTICE that on July 16, 2015, at 9:00 a.m., or as soon thereafter as the

3  matter may be heard, in the Courtroom of the Honorable Edward J. Davila, United States District

4  Judge, at the United States District Court for the Northern District of California, San Jose Division,

5  Robert F. Peckham Federal Building & United States Courthouse, 280 South 1st Street, San Jose,

6  California, Lead Plaintiff Washtenaw County Employees' Retirement System will respectfully

7  move, pursuant to Fed. R. Civ. P. 23(e), for entry of the [Proposed] Order Approving the Settlement

8  and Order of Dismissal with Prejudice, the [Proposed] Order Approving Plan of Allocation of

9  Settlement Proceeds, and the [Proposed] Judgment.   Lead Plaintiff's motion is based on the

10  following Memorandum in support thereof; the Stipulation of Settlement dated as of August 28,

11  2014 (Dkt. No. 166) ("Stipulation" or "Settlement")[1]; Lead Plaintiff's Response to Court Order

12  Requesting Additional Information Re: Motion for Preliminary Approval of Class Action Settlement

13  filed on December 19, 2014 (Dkt. No. 177); the Declaration of Willow E. Radcliffe in Support of

14  Motions for (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement

15  Proceeds; and (2) an Award of Attorneys' Fees and Expenses ("Radcliffe Decl."); the Declaration of

16  Layn R. Phillips in Support of Lead Plaintiff's Motion for Final Approval of Settlement ("Phillips

17  Decl."); the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement

18  of Class Action and the Proof of Claim and Release Form, B) Publication of the Summary Notice,

19  C) Internet Posting, and D) Requests for Exclusion Received to Date ("Sylvester Decl."); all of the

20  prior pleadings and papers in this action; and such additional information or argument as may be

21  required by the Court.

22                  **MEMORANDUM OF POINTS AND AUTHORITIES**

23  **I.    PRELIMINARY STATEMENT**

24          Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Washtenaw

25  County Employees' Retirement System ("Lead Plaintiff") submits this memorandum in support of

26  its motion for final approval of the Settlement of this securities class action for $24,750,000 (plus

27

28  _____
[1]     All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)                - 1 -

1   interest) in cash, consisting of $23 million from Celera Corporation ("Celera" or the "Company"), its

2   former Chief Executive Officer Kathy Ordoñez, former Chief Financial Officers Joel R. Jung and

3   Ugo DeBlasi, and former Chief Business Officer of Berkeley HeartLab, Inc. ("BHL"), Christopher

4   Hall (collectively, the "Celera Defendants") and $1.75 million from PricewaterhouseCoopers LLP

5   ("PwC"), and for approval of the Plan of Allocation of the Settlement proceeds.  The terms of the

6   Settlement are set forth in the Stipulation which was previously filed with the Court.  Dkt. No. 166.

7   The Settlement comes after four years of hard fought litigation, review and analysis of numerous

8   documents produced by Defendants and third parties, as well as extensive arm's-length settlement

9   negotiations.  Radcliffe Decl., ¶¶4, 78.  Ultimately, the parties reached an agreement-in-principle to

10  settle the Litigation in late May 2014 with the substantial assistance of the Honorable Layn R.

11  Phillips (Ret.), a highly respected and experienced mediator, and continued to work on the terms of

12  that settlement until the Stipulation of Settlement was executed on August 28, 2014.  *Id.*, ¶¶4, 70-

13  71.[2]  Lead Counsel, who have extensive experience and expertise in prosecuting securities class

14  actions, believe that the Settlement represents an excellent resolution of this complex litigation that

15  fully takes into account the specific risks of this case.  *Id.*, ¶¶4-5, 11-17, 72-76.[3]  Further, Lead

16  Plaintiff and Class Representative, Washtenaw County Employees' Retirement System, has

17  approved the Settlement.  *Id.*, ¶18.

18          This case was carefully investigated and vigorously litigated.  *See id.*, ¶¶3, 10, 24.

19  Defendants, who are represented by experienced and formidable securities litigators, have asserted

20  strong defenses, adamantly denied liability, and were firm in asserting their belief that Lead Plaintiff

21  could not prevail on the claims asserted.  *Id.*, ¶¶29, 34, 72, 76.  While the case settled at a relatively

22  _____

[2]   *See, e.g.*, *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 498 & n.14  (E.D. Mich. 2008) (recognizing
23  "the outstanding work done by Judge Phillips" in settlement negotiations and "the added benefit of
24  the insight and considerable talents of [this] former federal judge who is one of the most prominent
    and highly skilled mediators of complex actions").

25  [3]   The Court is respectfully referred to the accompanying Radcliffe Declaration for a summary of
    Lead Plaintiff's claims, the risks presented by continued litigation, the procedural and factual history
26  of the Litigation, the settlement negotiations, and why the Settlement, Plan of Allocation and Lead
    Counsel's request for an award of attorneys' fees and expenses are fair and reasonable.  The Court is
27  also respectfully referred to its Order denying the Celera Defendants' motion to dismiss the Second
    Amended Consolidated Complaint (Dkt. No. 65) and the Third Amended Consolidated Complaint
28  for Violation of the Federal Securities Laws (Dkt. No. 112) for the specific allegations in the action.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)                    - 2 -

1   early stage of the Litigation, a result consistent with the purposes of the Federal Rules of Civil

2   Procedure,[4] Lead Plaintiff's counsel spent a considerable amount of time and resources prior to the

3   resolution of the Litigation.  Radcliffe Decl., ¶¶15, 72-76.

4          The Settlement was achieved only after Lead Plaintiff's counsel: (i) directed investigative

5   interviews of many witnesses, including former employees of Celera;[5] (ii) thoroughly analyzed, with

6   the assistance of their forensic accountants, complex accounting allegations against the Defendants,

7   including allegations regarding the Company's bad debt that were similar to those that Celera

8   eventually restated; (iii) filed three detailed amended class action complaints, including the Third

9   Amended Consolidated Complaint for Violation of the Federal Securities Laws ("Third Amended

10  Complaint"), which added Celera's independently registered public accounting firm as a defendant;

11  (iv) successfully opposed the Celera Defendants' motion to dismiss the Second Amended

12  Consolidated Complaint for Violation of the Federal Securities Laws; (v) fully briefed PwC's motion

13  to dismiss the Third Amended Complaint, which was pending at the time of settlement; (vi)

14  vigorously pursued discovery, including serving Defendants and third parties with requests for

15  production of documents and serving multiple third-party subpoenas; (vii) reviewed documents

16  produced by Defendants and third parties; (viii) assessed the risks associated with summary

17  judgment and trial; (ix) prepared to take the depositions of fact witnesses; (x) responded to

18  Defendants' efforts to block discovery; (xi) prepared and filed a successful motion for class

19  certification, including submitting an expert report; and (xii) prepared for and attended mediation

20  with Judge Layn R. Phillips (Ret.) followed by post-mediation settlement discussions with the

21  assistance of Judge Phillips.  Radcliffe Decl., ¶¶3-4, 51-57.

22  ────────────────

23  [4]   *See In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005) (noting that early resolution of the case is consistent with Rule 1 of the Federal Rules of Civil Procedure).

24  [5]   This securities class action was brought against Celera, Kathy Ordoñez, the Company's former
25  Chief Executive Officer, Ugo DeBlasi and Joel R. Jung, the Company's former Chief Financial Officers, and Christopher Hall, BHL's former Chief Business Officer (collectively, the "Celera Defendants").  ¶1.  Prior to July 1, 2008, Celera was a wholly owned subsidiary of Applera.  ¶2.  On
26  July 1, 2008, Celera split-off from Applera and became an independent company.  *Id.*  Celera acquired BHL in October 2007.  ¶3.  BHL operated Celera's Lab Services segment during the Class
27  Period.  *Id.*  Celera is used generally throughout to refer to itself, BHL and/or Applera.  All paragraph references (¶ or ¶¶) are to the Third Amended Complaint, submitted to the Court under
28  seal on August 30, 2013 (Dkt. No. 94) and filed publicly on October 4, 2013 (Dkt. No. 112).

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 3 -

1   The Settlement takes into account the specific risks and obstacles that Lead Plaintiff and the

2   Class would face if litigation were to continue. *Id.*, ¶¶4-5, 11-17, 72-76.  If not for this Settlement,

3   the case would likely remain fiercely contested by the parties with the ultimate outcome uncertain.

4   Lead Counsel are highly experienced in prosecuting securities class actions, and have concluded that

5   the Settlement is an excellent recovery in the light of risk, delay and expense of continued litigation.

6   *Id.*  This conclusion is based on, among other things, the substantial and certain recovery obtained

7   when weighed against the significant risk, expense, and delay presented in continuing the Litigation

8   through the completion of discovery, Defendants' anticipated motion(s) for summary judgment, trial,

9   and probable post-trial motion(s) and appeal(s); analysis of the evidence adduced to date; past

10  experience in litigating complex securities actions; and the serious disputes between the parties

11  concerning the merits and damages.  *Id.*

12  For all of the reasons discussed herein and in the Radcliffe Declaration, it is respectfully

13  submitted that the Settlement should be finally approved by the Court.  Moreover, the Plan of

14  Allocation was developed with Lead Counsel's economic consultants and reflects an assessment of

15  the damages that the Class may have recovered had liability been successfully established at trial.

16  As a result, the Plan of Allocation provides a fair and reasonable basis for allocating the Net

17  Settlement Fund among Class Members, and therefore should be approved.

18  **II.     LITIGATION HISTORY**

19  The following is a brief history of the Litigation.  The initial complaint in this securities class

20  action was filed on June 14, 2010, in the United States District Court for the Northern District of

21  California.   On September 23, 2010, the Court appointed Washtenaw County Employees'

22  Retirement System as Lead Plaintiff, and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

23  Dkt. No. 21.  On October 15, 2010, Lead Plaintiff filed the Consolidated Amended Complaint for

24  Violation of the Federal Securities Laws (the "Complaint"), alleging violations of §§10(b) and 20(a)

25  of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder,

26  against the Celera Defendants.  Dkt. No. 24.

27  The Complaint alleged that during the Class Period, April 24, 2008 through July 22, 2009,

28  the Celera Defendants made materially false and misleading statements in: (i) reporting Celera's

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 4 -

1   earnings; (ii) certifying that the Company had adequate internal controls over financial reporting;

2   (iii) representing that Celera's lab services division's (BHL) revenue source principally consisted of

3   Medicare and other insurance carriers; and (iv) issuing revenue and earnings guidance for 2009 that

4   lacked a reasonable basis.  The Complaint further alleged that the Celera Defendants knew that

5   Celera's accounts receivable (*i.e.*, the payments due for laboratory services it provided but had not

6   yet collected from customers) were impaired as a result of Blue Cross/Blue Shield's decision to stop

7   paying Celera directly for its lab services.  *Id.*

8       On November 29, 2010, the Celera Defendants filed a motion to dismiss the Complaint.  Dkt.

9   No. 29.  The matter was fully briefed and set for hearing when the Company announced it would

10  restate Celera's Class Period financial results on March 18, 2011.  Pursuant to the Stipulation and

11  Order entered on March 24, 2011, Lead Plaintiff filed the Second Amended Consolidated Complaint

12  for Violation of the Federal Securities Laws (the "Second Amended Complaint") on May 6, 2011.

13  Dkt. Nos. 40, 45.  The Second Amended Complaint included additional allegations regarding the

14  elements of scienter and falsity, incorporating the admissions in Celera's restatement filed on March

15  18, 2011.  Dkt. No. 45.

16      On June 21, 2011, the Celera Defendants filed a motion to dismiss the Second Amended

17  Complaint, which Lead Plaintiff opposed in briefing and at oral argument.  Dkt. Nos. 48, 53.  On

18  September 4, 2012, the Court issued an Order Denying Celera's Motion to Dismiss (the "September

19  4, 2012 Order").  Dkt. No. 65.  On September 21, 2012, the Celera Defendants filed a Motion for

20  Leave to File Motion for Reconsideration of Order Denying Motion to Dismiss, which was

21  subsequently denied by the Court on September 3, 2013.  Dkt. Nos. 69, 95.  On October 19, 2012,

22  the Celera Defendants filed an answer to the Second Amended Complaint, which they subsequently

23  amended on January 29, 2013.  Dkt. Nos. 73, 90.

24      Following the Court's September 4, 2012 Order denying the Celera Defendants' motion to

25  dismiss, which lifted the discovery stay pursuant to 15 U.S.C. §78u-4(b)(3)(B) of the Private

26  Securities Litigation Reform Act of 1995 ("PSLRA"), Lead Plaintiff served the Celera Defendants

27  with its First Request for the Production of Documents on October 12, 2012.  The Celera Defendants

28  produced documents pursuant to Lead Plaintiff's request, beginning on October 24, 2012.  Lead

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 5 -

1   Plaintiff also issued third party subpoenas *duces tecum* to Celera's independently registered public

2   accounting firm, financial consultants, financial analysts, and medical insurance companies

3   obtaining additional evidence regarding the claims at issue.

4       On September 13, 2013, Lead Plaintiff issued its First Set of Interrogatories

5   ("Interrogatories") to the Celera Defendants.  On October 14, 2013, the Celera Defendants served

6   their responses and objections.  After additional discussions, the Celera Defendants agreed to further

7   supplement their responses in accordance with Fed. R. Civ. P. 33.  As a result, on April 9, 2014,

8   Lead Plaintiff and the Celera Defendants filed a joint stipulation requiring the Celera Defendants to

9   file supplemental responses by June 6, 2014, which was entered by the Court on April 11, 2014.

10  Dkt. Nos. 151, 155.

11      Following the review of the documents produced during discovery, Lead Plaintiff submitted

12  to the Court an administrative motion for leave to file under seal a motion for leave to file an

13  amended complaint along with a [Proposed] Third Amended Consolidated Complaint for Violation

14  of the Federal Securities Laws ("Proposed Third Amended Complaint") on August 30, 2013.  Dkt.

15  No. 94.  The Proposed Third Amended Complaint sought to add Celera's independently registered

16  public accounting firm, PwC, as a defendant.  Lead Plaintiff alleged that PwC violated the federal

17  securities laws by issuing clean audit reports for Celera during the Class Period despite its

18  knowledge that Celera's receivables were impaired because the Company was no longer being paid

19  directly by Blue Cross/Blue Shield.  On September 13, 2013, counsel for the Celera Defendants filed

20  a declaration withdrawing confidentiality designations referenced in Lead Plaintiff's Motion for

21  Leave to Amend Under Seal and Proposed Third Amended Complaint.  Dkt. No. 100.  In light of

22  that declaration, the Court denied Lead Plaintiff's request to file under seal on September 17, 2013

23  and Lead Plaintiff publicly filed the previously submitted motion and complaint on September 18,

24  2013.  Dkt. Nos. 102-103.  On October 3, 2013, the Court granted Lead Plaintiff's motion for leave

25  to file the Proposed Third Amended Complaint.  Dkt. No. 110.  Accordingly, on October 4, 2013,

26  Lead Plaintiff formally filed the Third Amended Complaint.  Dkt. No. 112.

27      On October 4, 2013, Lead Plaintiff filed its Motion for Class Certification.  Dkt. No. 113.

28  On November 13, 2013, the Celera Defendants filed a Statement of Non-Opposition to the motion.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 6 -

1    On November 18, 2013, Defendant PwC filed its response to Lead Plaintiff's Motion for Class

2    Certification.  Dkt. No. 136.  On December 11, 2013, Lead Plaintiff filed a reply in support of its

3    motion for class certification.  Dkt. No. 139.  On February 25, 2014, the Court issued an Order

4    Granting Lead Plaintiff's Motion for Class Certification.  Dkt. No. 146.

5         On November 1, 2013, the Celera Defendants filed an answer to the Third Amended

6    Complaint.  Dkt. No. 129.  On November 18, 2013, Defendant PwC filed a motion to dismiss the

7    Third Amended Complaint.  Dkt. No. 134.  On December 18, 2013, Lead Plaintiff filed its

8    Opposition.  Dkt. No. 140.  Defendant PwC filed its reply on January 15, 2014.  Dkt. No. 142.  On

9    March 25, 2014, the Court took Defendant PwC's motion to dismiss under submission.  Dkt. No.

10   150.

11        On November 5, 2013, depositions were scheduled to begin.  Four days prior to the

12   deposition, the Celera Defendants indicated they would not produce the first scheduled deponent,

13   Ms. Abbis, for deposition, asserting that the addition of PwC as a defendant operated to stay

14   discovery pursuant to 15 U.S.C. §78u-4(b)(3)(B).  Defendant PwC also asserted that depositions

15   should be stayed as a result of the PSLRA's discovery stay.

16        The parties were unable to reach an agreement as to whether discovery was stayed due to the

17   addition of PwC as a defendant.  As such, on November 12, 2013, the parties submitted their

18   respective positions to the Honorable Howard R. Lloyd in a document entitled the Discovery Dispute

19   Joint Report No. 1 Regarding Plaintiff's Motion to Compel Celera's Production of Heather Abbis for

20   Deposition and PwC's Production of Documents (the "Joint Report").  Dkt. No. 130.  On February

21   25, 2014, Magistrate Judge Lloyd issued an Order on the Joint Report, holding that discovery was

22   stayed to the extent it required PwC's participation, but further concluded that: (1) Lead Plaintiff

23   may propound non-party discovery that does not require PwC's participation; and (2) Celera will

24   continue to provide documentary discovery as long as that discovery (i) does not require PwC's

25   active participation and (ii) would not subject Celera to duplicate its discovery efforts if PwC's

26   motion to dismiss is denied.  Dkt. No. 145.

27

28

1    As a result of Judge Lloyd's Order, on March 17, 2014, the parties filed a Stipulation and

2    Proposed Order to Vacate Deadlines Set by September 24, 2013 Case Management Order, which

3    was entered by the Court on March 18, 2014.  Dkt. Nos. 147-148.

4    In late May 2014, the parties reached an agreement-in-principle to settle the case.

5    Subsequently, Lead Plaintiff and the Defendants continued negotiations resulting in the terms and

6    conditions set forth in the Stipulation.  Dkt. No. 166.  A preliminary approval hearing was held

7    before the Court on November 7, 2014, and on December 19, 2014, Lead Plaintiff filed supplemental

8    information regarding its motion for preliminary approval.  Dkt. No. 177.  On March 31, 2015, the

9    Court entered an Order Granting Motion for Preliminary Approval of Class Action Settlement

10   ("Preliminary Approval Order").  Dkt. No. 179.

11   **III.   THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
         ACTION SETTLEMENTS**

12

13   It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the

     preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

14   625 (9th Cir. 1982); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007)

15   ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in

16   class action law suits.").  Class actions readily lend themselves to compromise because of the

17   difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is

18   beyond question that "the public has an overriding interest in securing 'the just, speedy, and

19   inexpensive determination of every action.'"  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,

20   460 F.3d 1217, 1227 (9th Cir. 2006);[6] Fed. R. Civ. P. 1.  It is also beyond question that "there is an

21   overriding public interest in settling and quieting litigation," and this is "particularly true in class

22   action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util.*

23   *Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[7]  In deciding

24

25   _____

     [6]    Internal citations are omitted throughout unless otherwise indicated.

26   [7]    The law consistently favors the compromise of disputed class action claims.  *See Williams v.*
     *First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.

27   1995); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004);  *MWS Wire Indus., Inc. v.*
     *Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

28

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 8 -

whether to approve a proposed settlement of a stockholders' class action under Federal Rule of Civil

Procedure 23(e), the court must first find that the proposed settlement is "'fair, adequate, and

reasonable.'"[8]  The Ninth Circuit has provided factors which may be considered in evaluating the

fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.  The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375

(9th Cir. 1993); *Woo v. Home Loan Grp., L.P.*, No. 07-CV-202 H (POR), 2008 U.S. Dist. LEXIS

65144, at *8 (S.D. Cal. Aug. 25, 2008).  "'The relative degree of importance to be attached to any

particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief

sought, and the unique facts and circumstances presented by each individual case.'"  *Woo*, 2008 U.S.

Dist. LEXIS 65144, at *8 (quoting *Officers for Justice*, 688 F.2d at 625).

 The district court must exercise "sound discretion" in approving a settlement.  *Ellis v. Naval*

*Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*,

8 F.3d at 1375.  In exercising its discretion,

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit defines the limits of the inquiry to be made

by the court in the following manner:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of

---

[8] *Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL) - 9 -

1        wasteful and expensive litigation that induce consensual settlements.  The proposed
2        settlement is not to be judged against a hypothetical or speculative measure of what
      ***might*** have been achieved by the negotiators.

3  *Id.* (emphasis in original).

4        Therefore, courts have taken a liberal approach toward approval of class action settlements,

5  recognizing that the settlement process involves the exercise of judgment and that the concept of

6  "reasonableness" can encompass a broad range of results.  "'In most situations, unless the settlement

7  is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

8  with uncertain results.'"  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526

9  (C.D. Cal. 2004).  "As the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the

10  question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is

11  fair, adequate, and free from collusion.'"  *In re Wells Fargo Loan Processor Overtime Pay Litig.*,

12  No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, at *11 (N.D. Cal. Aug. 2, 2011) (citing

13  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998)).

14        When examined under the foregoing criteria, this Settlement is a highly favorable result for

15  the Class.  Lead Counsel believe there are serious questions as to whether a more favorable result

16  could be attained after summary judgment, trial, and the inevitable post-trial motions and appeals.

17  Radcliffe Decl., ¶15.  As discussed below, an analysis of relevant factors demonstrates that the

18  Settlement merits this Court's final approval.

19  **IV.**     **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE**

20
      **A.**     **The Settlement Enjoys a Presumption of Reasonableness Because It Is
21           the Product of Arm's-Length Settlement Negotiations**

22        The Settlement, which was negotiated between the parties with the substantial assistance of

23  Judge Phillips, provides a substantial and certain cash benefit to the Class in the amount of

24  $24,750,000.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-

25  collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. W. Publ'g*

26  *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, the Settlement enjoys a presumption of fairness

27

28

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)     - 10 -

1  because it is the product of arm's-length negotiations conducted by experienced and capable counsel

2  with a firm understanding of the strengths and weaknesses of their respective client's positions.[9]

3       The settlement negotiations were at all times hard-fought and at arm's length.  During these

4  negotiations, Lead Counsel zealously advanced Lead Plaintiff's positions and were fully prepared to

5  continue to litigate rather than accept a settlement that was not in the best interest of the Class.  The

6  Celera Defendants and Lead Plaintiff participated in a formal mediation session with Judge Phillips

7  on August 9, 2013, that involved an in-depth analysis of the Class' claims and the defenses that

8  would be asserted by the Celera Defendants.  Prior to the mediation, Lead Plaintiff and the Celera

9  Defendants submitted mediation statements which were provided to Judge Phillips and exchanged

10  among the parties.  An agreement to settle was not reached at the mediation despite diligent and

11  good faith efforts.  It was only after continued settlement negotiations among the parties, with the

12  assistance of Judge Phillips, did all parties reach an agreement-in-principle to settle the Litigation in

13  May 2014.  As Judge Phillips states:  "These negotiations were conducted at arm's length carefully

14  and in good faith by all parties.  The mediation process involved extensive analysis of the parties'

15  positions, including the merits of plaintiff's securities fraud claims, orders of this Court and the

16  pending motion to dismiss filed by PwC and defendants' potential defenses."  Phillips Decl., ¶6.

17       The settlement process and the parties involved in that process establish that the Settlement is

18  an "arms-length, non-collusive, negotiated resolution."  *Rodriguez*, 563 F.3d at 965.  It is clearly

19  "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Officers*

20  *for Justice*, 688 F.2d at 625.  Thus, the Settlement here enjoys the presumption of correctness and

21  should be approved.

22       **B.    The Settlement Amount Strongly Supports Approval**

23       The $24,750,000 obtained for the Class represents approximately 17% of Lead Plaintiff's

24  estimated aggregate damages of approximately $143 million, which is at the "higher end of the range

25  of reasonableness of recovery in class actions securities litigations."  *See In re Merrill Lynch & Co.*,

---

26  [9]    *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16

27  (N.D. Cal. July 18, 1997) ("the fact that the settlement agreement was reached in arm's length
negotiations, after relevant discovery ha[s] taken place create[s] a presumption that the agreement is

28  fair"), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *Ellis*, 87 F.R.D. at 18.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)    - 11 -

1   *Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 U.S. Dist. LEXIS 9450, at *33

2   (S.D.N.Y. Feb. 1, 2007) (court approved $40.3 million settlement representing approximately 6.25%

3   of estimated damages).  It also represents approximately 82% of the estimated damages of closer to

4   $30 million that the Celera Defendants represented at the November 7, 2014 preliminary hearing to

5   be Defendants' estimated damages.  *See* Nov. 7, 2014 Hearing Tr. at 18:1-5.

6          Academic research supports these results and the reasonableness of the Settlement.  A recent

7   Cornerstone Research study found that for securities class actions that settled with estimated

8   damages of between $125 million and $249 million (where this Settlement falls), the median

9   recovery was 2.2% for cases that settled in 2014 and 2.9% for cases that settled between 2005-2013.

10  Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements 2014*

11  *Review and Analysis* at 9, Figure 8 (Cornerstone Research 2015).  And for securities class cases that

12  settled in the Ninth Circuit between 2005-2014, the median recovery was 2.4% of estimated

13  damages.  *Id.* at 22, Figure 21.  Thus, the $24.75 million recovery is a strong result – at

14  approximately 17% of Lead Plaintiff's estimated damages and 82% of the Celera Defendants'

15  represented damages – it far exceeds the median recovery for other securities class action

16  settlements.

17         The percentage of estimated damages is not the only calculation that supports approval.

18  Indeed, the $24.75 million settlement amount is also well-above the $6.5 million median settlement

19  amount of reported securities class action cases in 2014, and greater than the median reported

20  settlement amounts since Congress passed the PSLRA, which have ranged from $3.7 million in 1996

21  to $6.5 million in 2014 (with a peak of $12.3 million in 2012).  *See* Dr. Renzo Comolli & Svetlana

22  Starykh, *Recent Trends in Securities Class Action Litigation:  2014 Full-Year Review*, at 28, Figure

23  24 (NERA Jan. 20, 2015).  These objective measures provide strong support for final approval.  In

24  addition, this Court found that the approximate amount of money ($18 million) that will be available

25  for distribution "is a significant amount of actual money from the settlement fund that will be

26  distributed to individual class members."  Dkt. No. 179 at 9.

27

28

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)                     - 12 -

1

### C.   The Strength of Lead Plaintiff's Case When Balanced Against the Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement

2

3         In determining whether the Settlement is fair, reasonable, and adequate, the Court should

4    balance the continued risks of litigation, the benefits afforded to the Class and the immediacy and

5    certainty of a substantial recovery. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal.

6    1979); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Commc'ns Sec. Litig.*, 618 F.

7    Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  In other words,

8         [t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

9

10   *Nat'l Rural*, 221 F.R.D. at 526.  In the context of approving class action settlements, "[c]ourts

11   experienced with securities fraud litigation 'routinely recognize that securities class actions present

12   hurdles to proving liability that are difficult for plaintiffs to clear.'"  *Redwen v. Sino Clean Energy,*

13   *Inc.*, No. CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *19-*20 (C.D. Cal. July 9, 2013)

14   (quoting *In re Flag Telecom Holdings*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS

15   119702, at *48 (S.D.N.Y. Nov. 8, 2010)).

16        As in every complex case of this kind, Lead Plaintiff faced formidable obstacles to recovery

17   if the Litigation were to continue.  The principal claims in this Litigation are based upon §10(b) of

18   the Exchange Act and Rule 10b-5 promulgated thereunder for securities fraud.  While Lead Counsel

19   believe they could prove the claims asserted, there is nevertheless a great deal of risk present as there

20   is certainly no guarantee that they would prevail at trial and ultimately collect on a larger judgment

21   after trial and subsequent appeals.  Post-PSLRA rulings make it clear that the risk of no recovery has

22   increased exponentially since the PSLRA was adopted in 1995.[10]

23

24   ----

[10]   *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (acknowledging that

25   "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").  The court in *Ikon* went on to indicate a number of additional factors that have made

26   litigation of securities class actions more difficult.  "The Act imposes many new procedural hurdles, including restrictions on the types of plaintiffs who may serve as representatives and requiring

27   increased court intervention in the selection of lead counsel.  It also substantially alters the legal standards applied to securities fraud claims in ways that generally benefit defendants rather than

28   plaintiffs."  *Id.* at 194-95.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 13 -

1   Securities litigation generally involves complex issues of fact and law, and this case is no

2   exception.  For example, to establish liability under §10(b), Lead Plaintiff bears the burden of

3   proving, *inter alia*, that Defendants participated in the public dissemination of false or misleading

4   information, that the information was material to investors in determining whether to invest in Celera

5   stock, that the information impacted the market price of the stock, caused damage to the Class, and

6   that Defendants acted with scienter.  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d

7   385, 388 (9th Cir. 2002).  Further litigation to establish both liability and damages poses a

8   significant threat to any recovery for the Class.

9   While Lead Counsel believe that the Litigation has significant merit, they recognize that

10   Lead Plaintiff faced numerous risks and uncertainties and were well aware that many other similar

11   actions have been prosecuted in the belief that they were meritorious, only to lose on dispositive

12   motions, at trial, or on appeal.  The Settlement recognizes the risks of complex litigation involving

13   difficult legal and factual issues.  As discussed herein and in the Radcliffe Declaration, the risks of

14   continued litigation, when weighed against the substantial and certain recovery for the Class,

15   confirms the reasonableness of the Settlement.  The Settlement is unquestionably better than another

16   distinct possibility – little or no recovery for the Class.

17   **1.      The Risks of Proving Liability**

18   To defeat Defendants' likely motions for summary judgment and to prevail at trial, Lead

19   Plaintiff would be required "to present evidence sufficient to support a verdict in its favor on every

20   element of its claim for which it will carry the burden of proof at trial."  *In re Apple Computer Sec.*

21   *Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989).  The crux of Lead Plaintiff's allegations pertain to

22   Celera's BHL division.[11]  ¶4.  The Third Amended Complaint alleges that the Celera Defendants

23   failed to account for a significant portion of BHL's accounts receivable that were critically impaired

24   and largely "uncollectible" as required by Generally Accepted Accounting Principles ("GAAP") and

25   U.S. Securities and Exchange Commission ("SEC") rules.  ¶5.  As a result, the Celera Defendants

26   made materially false and misleading statements in Celera's Class Period financial statements filed

27   ---
[11]   Celera is a personalized disease management company that acquired a lab service company,

28   BHL, approximately six months before the start of the Class Period (April 24, 2008-July 22, 2009).

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)              - 14 -

1    with the SEC, in press releases and during investor conference calls regarding Celera's reported net

2    revenue, earnings, bad debt and accounts receivable.  *See, e.g.*, ¶¶79, 86-89, 94-97, 154-156, 158-

3    159, 161, 165-166, 177, 182, 185.   The Third Amended Complaint principally alleges these

4    statements were false because the Celera Defendants knew that Celera's accounts receivable (*i.e.*, the

5    payments due for laboratory services it provided that it still had not collected from customers) were

6    impaired as a result of Blue Cross/Blue Shield's decision to stop paying Celera directly for its lab

7    services.  ¶¶8, 46-47, 55-56, 68, 71, 76, 114.

8         Lead Plaintiff also alleged that PwC violated auditing standards by issuing clean audit reports

9    for Celera during the Class Period despite its knowledge that Celera's receivables were impaired

10   because the Company was no longer being paid directly by Blue Cross/Blue Shield.  ¶¶224, 244-246.

11   At the time of settlement, PwC's motion to dismiss the Third Amended Complaint was pending.

12   There was a substantial risk that absent settlement the Court would grant PwC's motion.  Radcliffe

13   Decl., ¶¶14, 74.   As to the element of scienter, Lead Plaintiff was required to plead that the

14   accounting practices employed by PwC were so deficient that its audit amounted to no audit at all, or

15   otherwise plead an egregious refusal to see the obvious, or to investigate the doubtful, or that the

16   accounting judgments made by PwC were made such that no reasonable accountant would have

17   made the same decisions if confronted with the same facts.  *In re Software Toolworks Inc.*, 50 F.3d

18   615, 628 (9th Cir. 1994).  While there is no separate rule for pleading scienter against auditors, the

19   Ninth Circuit has acknowledged that a plaintiff alleging scienter against an independent auditor

20   typically faces a greater challenge as compared to pleading scienter against company defendants.

21   *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011).  As such, Lead

22   Plaintiff faced the possibility that despite pleading convincing facts as well as supporting evidence

23   gleaned from discovery, the Court could find that PwC's alleged conduct failed to satisfy the

24   stringent pleading requirements set forth by the Ninth Circuit.  Radcliffe Decl., ¶¶14, 74.

25        Lead Counsel believe that based on the evidence adduced to date, including interviews with

26   former Celera employees and documents produced by Defendants and third parties in discovery,

27   Lead Plaintiff had a strong theory of liability and would likely be able to prove that the Celera

28   Defendants knowingly made false and misleading statements concerning Celera's revenues and

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)                - 15 -

1   earnings, its internal controls over financial reporting, that BHL's revenue source principally

2   consisted of Medicare and other insurance carriers and when they issued Celera's revenue and

3   earnings guidance for 2009.  Further, that Lead Plaintiff would likely be able to prove that PwC

4   knowingly issued false statements to investors when it issued unqualified opinions with respect to

5   Celera's Class Period financial statements.  While Lead Counsel believe that the claims are strong

6   and each of the claims are supported by documentary evidence, getting past summary judgment and

7   establishing liability at trial is never guaranteed.  Radcliffe Decl., ¶¶12, 72, 73.  Defendants have

8   steadfastly denied liability and have asserted defenses from the outset.  *Id.*, ¶¶3, 72, 76.

9       Although Lead Plaintiff survived the Celera Defendants' attacks on the pleadings, it still

10   faced serious obstacles to recovery, both with respect to liability and damages.  *See Delphi*, 248

11   F.R.D. at 496 (discussing "the risk that Defendants could prevail with respect to certain legal or

12   factual issues, which could result in the reduction or elimination of Plaintiffs' potential recoveries").

13   One of the most difficult issues going forward is Lead Plaintiff's ability to prove scienter, *i.e.*, that

14   Defendants acted with knowledge of, or with recklessness as to, the alleged falsity of their

15   statements and omissions.  Radcliffe Decl., ¶¶11-12.  A defendant's state of mind in a securities case

16   is often the most difficult element of proof and one which is rarely supported by direct evidence such

17   as an admission.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008); *Smith v.*

18   *Dominion Bridge Corp.*, No. 96-7580, 2007 U.S. Dist. LEXIS 26903, at *17 (E.D. Pa. Apr. 11,

19   2007) ("Since stockholders normally have 'little more than circumstantial and accretive evidence to

20   establish the requisite scienter,' proving scienter is an 'uncertain and difficult necessity for

21   plaintiffs.'").  Thus, it was quite possible that Lead Plaintiff would procure documentary and

22   testimonial evidence from all Defendants and others with knowledge about the relevant facts, yet not

23   be able to adduce sufficient evidence to satisfy its burden of proof on this issue at trial.  Radcliffe

24   Decl., ¶¶11, 15-16.

25       Defendants have previously argued, and would likely argue again at summary judgment

26   and/or trial, that Lead Plaintiff is unable to demonstrate scienter because it could not show

27   Defendants acted deliberately or recklessly.  *Id.*, ¶¶72-76.  For example, Lead Plaintiff faced the risk

28   that it would be unable to prove that at the time Celera and its executives provided the Company's

1  2009 guidance to investors on February 17, 2009 and again on May 6, 2009, they did so with actual

2  knowledge that these statements were materially false.  *Id.*, ¶¶13-14, 74-75.  Because financial

3  forecasts are typically identified as "forward-looking," they are subject to the protections of the

4  PSLRA's Safe Harbor provisions, requiring plaintiffs to prove more than defendants acted with

5  deliberate recklessness.  *See Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir.

6  2014).  If Lead Plaintiff was unable to prove that Defendants knew these statements were false when

7  issued, this could adversely impact damages as the disclosures on July 22, 2009 include the

8  withdrawal of Celera's 2009 guidance.  ¶23.  In addition, the Celera Defendants would likely

9  introduce evidence to show that they exercised sound business judgment, devoting substantial

10  resources to the growing magnitude of the collections issue and the effect of the level of bad debts

11  on Celera's revenues.

12       The accounting manipulations alleged are complex and Lead Plaintiff would have to prove

13  that the Celera Defendants recklessly violated GAAP and in auditing Celera's financial statements

14  that Defendant PwC's conduct essentially amounted to no audit at all.  Radcliffe Decl., ¶74.

15  Because GAAP is not "'a canonical set of rules that will ensure identical accounting treatment of

16  identical transactions by all accountants'" the determination of many of the accounting issues would

17  be subject to expert testimony.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d

18  1178, 1186 (D. Colo. 2004).  Indeed, "GAAP generally tolerates a range of reasonable treatments,

19  leaving the choice among reasonable treatments to management."  *Id.*

20       Although Lead Plaintiff believes that it possesses persuasive evidence to support its claims, it

21  is aware that Defendants could present counter-evidence and other substantial obstacles to obtaining

22  a judgment in its favor after trial.  Moreover, there is no certainty that additional discovery would

23  tend to support or disprove Lead Plaintiff's allegations.  Lead Plaintiff would also rely on significant

24  testimony from current and/or former Celera and PwC employees, all of whom would be testifying

25  about events that occurred, in some instances, more than six years ago.  As a result of the significant

26  lapse of time between the events of interest and any deposition or trial, the ability as well as the

27  willingness of many witnesses to testify completely about the events would be impaired.

28

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 17 -

1

### 2.       The Risks of Proving Loss Causation and Damages

2    Even if Lead Plaintiff successfully established liability, it faced substantial risks in proving

3    loss causation and damages.  Radcliffe Decl., ¶13.  Proving loss causation is a major obstacle that a

4    plaintiff must overcome to successfully prosecute a securities class action and would likely remain a

5    hotly contested issue.  There is no question that the Celera Defendants would, as they did in their

6    motions to dismiss, contest loss causation at summary judgment and at trial if litigation continued.

7    For example, the Celera Defendants would attempt to prove at summary judgment and/or trial that

8    the Company's stock drop on February 18, 2009 (following the disclosures on February 17, 2009)

9    was caused by the market's reaction to Celera's guidance for FY09, which was purportedly below

10   analysts' expectations, as opposed to Lead Plaintiff's allegation that the stock price decline was a

11   result of fraud-related disclosures, including disclosures related to Celera's bad debt.  Radcliffe

12   Decl., ¶¶13, 73.  The Celera Defendants have also argued that in the July 2009 press release, the

13   Company announced that it expected revenues for the second quarter of 2009 to be below revenues

14   for the prior year quarter as a result of several factors, but the Celera Defendants contend the press

15   release contained no details about the bad debt charge, implying that the July 23, 2009 stock drop

16   was not related to Lead Plaintiff's allegations concerning Defendants' scheme to conceal bad debt.

17   *Id.*, ¶¶13, 73.

18   The United States Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336,

19   346 (2005), and subsequent cases interpreting *Dura*, have made proving loss causation even more

20   difficult and uncertain than in the past.  *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260 (D.N.H.

21   2007) ("Proving loss causation would be complex and difficult.").  There are numerous examples

22   that illustrate this point.  In *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist.

23   LEXIS 50995 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), the court granted

24   summary judgment in defendants' favor holding that shareholder plaintiffs failed to present

25   sufficient evidence to establish loss causation under Rule 10b-5.  While the Ninth Circuit reversed

26   the decision, the court in *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHx-JAT, 2008 U.S.

27   Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 U.S. App. LEXIS 14478 (9th

28   Cir. June 23, 2010), on a motion for judgment as a matter of law, overturned a jury verdict in favor

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 18 -

1    of shareholders based on insufficient evidence presented at trial to establish loss causation.[12]  Loss

2    causation was certainly a significant risk Lead Plaintiff faced if litigation continued.

3            The amount of damages incurred by Class Members would likely be hotly-contested at trial.

4    Damages in securities class action cases are frequently difficult to prove.  *See* Radcliffe Decl., ¶73.

5    At trial, the damage assessments of Lead Plaintiff's and Defendants' experts were sure to vary

6    substantially, and this critical element at trial would likely be reduced to a "battle of the experts."

7    *Tyco*, 535 F. Supp. 2d at 260-61 ("even if the jury agreed to impose liability, the trial would likely

8    involve a confusing 'battle of the experts' over damages").  The determination of damages is a

9    complicated and uncertain process involving conflicting expert testimony.  Radcliffe Decl., ¶73.

10   Expert testimony rests on many subjective assumptions that a jury could reject as speculative or

11   unreliable.  The reaction of a jury to battling expert testimony is highly unpredictable.  Lead Counsel

12   recognize the possibility that a jury could be swayed by convincing experts for the Defendants, and

13   find that there are little or no damages.  *See, e.g.*, *In re Veeco Instruments Sec. Litig.*, No. 05 MDL

14   0165 (CM), 2007 U.S. Dist. LEXIS 85629, at *30 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with

15   respect to damages would depend on its reaction to the complex testimony of experts, a reaction

16   which at best is uncertain.").

17           Even if Lead Plaintiff prevailed and obtained a substantial judgment after trial, there is little

18   doubt that Defendants would have filed post-trial motions and/or appeals which raised two

19   significant risks for the Class.  Radcliffe Decl., ¶15.  First, they would receive nothing during the

20   post-trial motions and appeals process which would have likely spanned several years.  *Id.*  Second,

21   they could ultimately receive no recovery despite prevailing at trial given that post-trial motions or

22   appeals of any verdict carries the risk of reversal.  *Id.*  Finally, even with a judgment in hand, there is

23

24

---

25   [12]    *See also Phillips v. Scientific-Atlanta, Inc.*, 489 Fed. App'x. 339 (11th Cir. 2012) (upholding summary judgment in favor of defendants on loss causation grounds in a case litigated since 2001);
26   *In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV-UNGARD, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (court granted defendants' judgment as a matter of law on the basis of loss causation, overturning jury verdict and award in plaintiff's favor), *aff'd*, 688 F.3d 713 (11th
27   Cir. 2012); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

28

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 19 -

1  no guarantee that a significant judgment entered years down the road would be collectable.

2  Therefore, the amount of damages the Class would actually recover if successful at trial is uncertain.

3        It is the informed belief of Lead Plaintiff and its counsel that the Settlement is in the best

4  interests of the Class.  Although Lead Counsel believe that the case is meritorious, their experience

5  has taught them that such risks can render the outcome of a trial extremely uncertain.  *See In re Mfrs.*

6  *Life Ins. Co. Premium Litig.*, No. MDL 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec.

7  21, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at

8  trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily

9  enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future

10  proceedings").

11          **3.**     **The Complexity, Expense, and Likely Duration of the**
                        **Litigation Justifies the Settlement**

12        The immediacy and certainty of a recovery is a factor for the Court to balance in determining

13  whether this proposed Settlement is fair, adequate, and reasonable.  Courts have consistently held

14  that "[t]he expense and possible duration of the litigation should be considered in evaluating the

15  reasonableness of [a] settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see*

16  *also Officers for Justice*, 688 F.2d at 626.

17        Here, Lead Counsel obtained a substantial and certain recovery for the Class.  Absent this

18  Settlement, the time and expense of continued litigation would have been substantial, without the

19  Class receiving the certain and substantial benefit of the Settlement, thus creating the possibility that

20  the Class would ultimately receive less or no recovery at all.  As noted above, Defendants have

21  demonstrated a commitment to defend this case through and beyond trial, if necessary, and are

22  represented by well-respected and highly capable counsel from two separate law firms.  As the court

23  noted in *Ikon*, which is applicable here:

24          In the absence of a settlement, this matter will likely extend for . . . years longer with
        significant financial expenditures by both defendants and plaintiffs.  This is partly

25          due to the inherently complicated nature of large class actions alleging securities
        fraud: there are literally thousands of shareholders, and any trial on these claims

26          would rely heavily on the development of a paper trial [sic] through numerous public

27          and private documents.

28  194 F.R.D. at 179.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)     - 20 -

1    As the securities claims advanced by Lead Plaintiff involve complex legal and factual issues,

2    additional document discovery, numerous depositions, and extensive expert discovery and testimony

3    would be necessary.  Further, given the posture of the case and Magistrate Judge Lloyd's ruling

4    staying discovery involving PwC, it was uncertain when depositions could be taken or when

5    discovery in this action would be completed.  There was a risk that the Court might require further

6    amendments of the claims against PwC and that subsequent briefing on those amended claims would

7    be required, inevitably delaying discovery.  Moreover, after completion of discovery, Defendants'

8    anticipated motion(s) for summary judgment would have to be briefed and argued, a pre-trial order

9    would have to be prepared, proposed jury instructions would have to be submitted, and motions *in*

10   *limine* would have to be filed and argued.  Preparing the case for trial necessarily involves

11   substantial time and expense.  The trial itself would likely be long, expensive, and uncertain and no

12   matter the outcome, appeals would be virtually assured, which would add considerably to the

13   expense and duration of the action.  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*

14   *Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class

15   action would be a long, arduous process requiring great expenditures of time and money on behalf of

16   both the parties and the court").

17   There exists no doubt that the Settlement will spare the litigants the significant delay, risk,

18   and expense of continued litigation which would have caused Class Members who suffered

19   economic losses between April 2008 and July 2009 to wait years longer for claims to be resolved.

20   *See Reynolds v. Beneficial*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is

21   worth a great deal more than a dollar ten years from now.").

22   As the Ninth Circuit has made clear, the very essence of a settlement agreement is

23   compromise, "'a yielding of absolutes and an abandoning of highest hopes'":

24   "Naturally, the agreement reached normally embodies a compromise; in exchange
     for the saving of cost and elimination of risk, the parties each give up something they

25   might have won had they proceeded with litigation."

26   *Officers for Justice*, 688 F.2d at 624; *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to

27   undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the

28   measure of their demands).

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 21 -

### D.   Sufficient Information Existed to Determine the Propriety of Settlement

While the Settlement comes before the end of the discovery process and dispositive motion proceedings, both the knowledge of Lead Counsel and the proceeding themselves have reached a stage where an intelligent evaluation of the Litigation and the propriety of settlement could be made. *See Officers for Justice*, 688 F.2d at 625; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  As discussed above and in the Radcliffe Declaration, an extensive investigation of the facts alleged was conducted, Lead Counsel consulted with in-house consultants as well as an expert, fully briefed the Celera Defendants' motions to dismiss and PwC's motion to dismiss, and demanded and obtained discovery from Defendants as well as third parties totaling over 1.1 million pages of documents.  To review documents produced in discovery, Lead Counsel used electronic discovery databases and targeted search terms, as well as a physical hands-on review of certain portions of the productions in reviewing the documents produced.  Radcliffe Decl., ¶60.  Further, because of the complex accounting aspects of Lead Plaintiff's allegations, Lead Counsel's forensic accounting staff spent considerable time reviewing and analyzing accounting related documents, including PwC's workpapers and the Company's restatement.  *Id.*  Lead Counsel also participated in extensive settlement negotiations, including an all-day mediation session with the Celera Defendants where the Lead Plaintiff's claims and the Celera Defendants' defenses were fully vetted.  *See* Phillips Decl., ¶6.  Prior to the mediation, the Lead Plaintiff and the Celera Defendants submitted to Judge Phillips and exchanged detailed opening mediation statements which further highlighted the factual and legal issues in dispute.  There is no question that Lead Plaintiff and its counsel were in an excellent position to evaluate the strengths and weaknesses of the claims asserted and defenses raised by Defendants, as well as the substantial risks of continued litigation and the propriety of settlement.  Having sufficient information to properly evaluate the case, the Litigation was settled on terms highly favorable to the Class.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)                    - 22 -

### E.   The Recommendations of Experienced Counsel After Extensive Litigation and Arm's-Length Settlement Negotiations Favor the Approval of the Settlement

As the Ninth Circuit observed in *Rodriquez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action.  563 F.3d at 965.  Courts have recognized that "'"[g]reat weight" is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'"  *Nat'l Rural*, 221 F.R.D. at 528.  As courts have recognized, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  *Omnivision*, 559 F. Supp. 2d at 1043.  Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely appeals and subsequent proceedings necessary if Lead Plaintiff did prevail against Defendants at trial, have concluded that the Settlement is an excellent result for the Class.  Lead Counsel have significant experience in securities class action litigation and have negotiated numerous other class action settlements throughout the country.  *See* www.rgrdlaw.com.  As Judge Phillips states:  "There is no question in my mind that the settlement reached represents a considered judgment by plaintiff's counsel, Robbins Geller Rudman & Dowd LLP, who are among the most capable and experienced lawyers in the country and who took on a risky and complicated accounting case, including one that sought to add an auditor as a defendant, and that the proposed settlement is fair and reasonable."  Phillips Decl., ¶7.  As a result, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable."  *Omnivision*, 559 F. Supp. 2d at 1043.

### F.   Reaction of the Class Supports Approval of the Settlement

Pursuant to this Court's Preliminary Approval Order, the Court-approved Notice of Proposed Settlement of Class Action (the "Notice") and Proof of Claim and Release form (the "Proof of Claim") were mailed to potential Class Members who could be identified with reasonable effort.[13]

---

[13]   *See* ¶¶3-10 of the accompanying Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Proposed Settlement of Class Action and the Proof of Claim and Release Form, B) Publication of the Summary Notice, C) Internet Posting, and D) Requests for Exclusion Received to Date.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)   - 23 -

1    In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the

2    *Business Wire* on April 9, 2015 (*Id.*, ¶13), and the Stipulation, Notice, Proof of Claim and

3    Preliminary Approval Order were posted to a website dedicated to the Settlement

4    (www.celerasecuritiessettlement.com), which became operational on April 6, 2015.  *Id.*, ¶12.  The

5    Notice advised the Class of the terms of the Settlement, the Plan of Allocation, and counsel's request

6    for an award of attorneys' fees and expenses, as well as the procedure and deadline for filing

7    objections and opting out of the Class.[14]  To date, more than 9,300 Notices and Proofs of Claim have

8    been mailed to potential Class Members and nominees.  While the objection deadline – May 14,

9    2015 – has not yet passed, to date, not a single Class Member has filed an objection to the

10   Settlement, the Plan of Allocation, or counsel's request for an award of attorneys' fees and

11   expenses.[15]

12           While not conclusive, "the fact that the overwhelming majority of the class willingly

13   approved the offer and stayed in the class presents at least some objective positive commentary as to

14   its fairness." *Hanlon*, 150 F.3d at 1027.  Of course, "[t]he fact that some class members object to the

15   Settlement does not by itself prevent the court from approving the agreement." *Brotherton v.*

16   *Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  "'A certain number of . . . objections are to

17   be expected in a class action.'" *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521,

18   533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636

19   F.3d 235 (6th Cir. 2011).

20           Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and

21   adequate, and therefore deserves this Court's final approval.

22   **V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

23           Lead Plaintiff also seeks approval of the Plan of Allocation of the Settlement proceeds.  The

24   Plan of Allocation is set forth in full in the Notice mailed to potential Class Members.

25

26   [14]   The Stipulation, Notice, Proof of Claim, and the Preliminary Approval Order were also posted on
     Lead Counsel's website.

27   [15]   In accordance with the Preliminary Approval Order (Dkt. No. 179), any objections will be
28   addressed by Lead Counsel on or before June 24, 2015.

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 24 -

1   Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of

2   the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the

3   settlement as a whole – the plan must be fair and reasonable.  *See Ikon*, 194 F.R.D. at 184; *Class*

4   *Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  District courts enjoy "broad supervisory

5   powers over the administration of class-action settlements to allocate the proceeds among the

6   claiming class members . . . equitably."  *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978);

7   *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation

8   formula need only have a reasonable, rational basis, particularly if recommended by "experienced

9   and competent" class counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf*

10  *Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

11   The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund

12  among all Class Members who submit an acceptable Proof of Claim.  Here, the Plan of Allocation

13  was developed by Lead Counsel with the assistance of their economic consultants and reflects an

14  assessment of the damages that could have been recovered at trial under the theories asserted in the

15  case by Lead Plaintiff.  As a result, the Plan of Allocation will result in a fair distribution of the

16  available proceeds among Class Members who submit valid claims and therefore should be

17  approved.

18  **VI.   CONCLUSION**

19   For all the reasons set forth above, in the Radcliffe Declaration, and the entire record, the

20  Settlement and Plan of Allocation warrants this Court's final approval.

21  DATED:  April 29, 2014   Respectfully submitted,

22   ROBBINS GELLER RUDMAN
      & DOWD LLP
23   WILLOW E. RADCLIFFE
     AELISH M. BAIG
24   SUNNY S. SARKIS

25

26

27   s/ Willow E. Radcliffe
     ―――――――――――――――
     WILLOW E. RADCLIFFE

28   Post Montgomery Center

1022653_1

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)          - 25 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
    & DOWD LLP
JEFFREY D. LIGHT
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

VANOVERBEKE MICHAUD &
    TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

GLANCY BINKOW & GOLDBERG LLP
LIONEL Z. GLANCY
ROBERT V. PRONGAY
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  310/201-9150
310/201-9160 (fax)

Additional Counsel for Plaintiff

NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF SETTLEMENT & MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 5:10-cv-02604-EJD(HRL)      - 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 29, 2015.

s/ Willow E. Radcliffe
WILLOW E. RADCLIFFE

ROBBINS GELLER RUDMAN
   & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  willowr@rgrdlaw.com

## Mailing Information for a Case 5:10-cv-02604-EJD In re: "Celera Corporation Securities Litigation."

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mikael A. Abye**
  mabye@shearman.com,ron.cheatham@shearman.com,bhunter@shearman.com

- **Aelish Marie Baig**
  AelishB@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Satyam N. Bee**
  sbee@kslaw.com

- **James J. Capra , Jr**
  jcapra@kslaw.com,shosein@kslaw.com,jcmccullough@kslaw.com

- **Geoffrey M. Ezgar**
  gezgar@kslaw.com

- **Stephen D. Hibbard**
  shibbard@shearman.com,rcheatham@shearman.com

- **Ryan Anthony Llorens**
  ryanl@rgrdlaw.com,jaya@rgrdlaw.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,khuang@rgrdlaw.com,ptiffith@rgrdlaw.com,e_file_sd@rgrdlaw.com,ryanl@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Sara Ann Ricciardi**
  sara.ricciardi@shearman.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Sunny September Sarkis**
  Ssarkis@rgrdlaw.com,tcraig@rgrdlaw.com

- **Timothy Tully Scott**
  tscott@kslaw.com,rpada@kslaw.com,jsouza@kslaw.com,zjobe@kslaw.com

- **David Conrad Walton**
  davew@rgrdlaw.com,ldeem@rgrdlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **brian howard polovoy**
  bpolovoy@shearman.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine     J. Kowalewski
Robbins Geller Rudman & Dowd LLP
655 W Broadway
Suite 1900
San Diego, CA 92101
```