UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| In re CELERA CORPORATION SECURITIES LITIGATION | Case No. 5:10-cv-02604-EJD<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 180, 181 |
| --- | --- |

The instant case is a putative class action concerning violations of federal securities laws. This suit was brought by Lead Plaintiff Washtenaw County Employees' Retirement System ("Plaintiff") against Defendants Celera Corporation ("Celera"), Celera's Chief Executive Officer Kathy Ordoñez, Celera's former Chief Financial Officers Joel R. Jung and Ugo DeBlasi, Celera's Chief Business Officer of Berkeley Heartlab, Inc. ("BHL") Christopher M. Hall, and PricewaterhouseCoopers LLP ("Pricewaterhouse").[1] Presently before the court is Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees and Costs. See Dkt. Nos. 180, 181.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa, pursuant to the Securities Exchange Act of 1934 ("1934 Act"). Having carefully reviewed the proposed settlement agreement and the parties' arguments, along with oral argument, the court has

---

[1] Collectively, all defendants will be referred to as "Defendants." The defendants associated with Celera, not including Pricewaterhouse, will be referred to as the "Celera Defendants."

1

determined that the Motion for Final Approval of Class Action Settlement will be granted, and the Motion for Attorneys' Fees and Costs will be granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual and Procedural Background[2]

Celera is a personalized disease management company that acquired a lab service company, Berkeley HeartLab, Inc. ("BHL"), approximately six months before the start of the Class Period of April 24, 2008.  The Class Period spans from April 24, 2008 through July 22, 2009.

Plaintiff alleges that the Celera Defendants failed to account for a significant portion of BHL's accounts receivable that were critically impaired and largely "uncollectible" as required by Generally Accepted Accounting Principles ("GAAP") and U.S. Securities and Exchange Commission ("SEC") rules.  Consequently, Plaintiff alleges that the Celera Defendants made materially false and misleading statements in Celera's Class Period financial statements filed with the SEC, in press releases and during investor conference calls regarding Celera's reported net revenue, earnings, bad debt and accounts receivable.  According to Plaintiff, the Celera Defendants knew that Celera's accounts receivable (i.e., the payments due for laboratory services it provided that it still had not collected from customers) were impaired as a result of Blue Cross/Blue Shield's decision to stop paying Celera directly for its lab services.

Plaintiff further alleges that Celera's CEO and CFOs falsely attested in Sarbanes-Oxley Act of 2002 ("SOX") certifications accompanying Celera's Class Period financial statements that the company maintained effective internal controls over financial reporting when, in fact, it had material weaknesses over its internal controls relating to the timely recognition of unreimbursed and uncollectible charges for services.  As a consequence of failing to account for its significant

---

[2] The background is derived from the proposed settlement agreement, which represents a mutually agreed-upon statement of facts alleged by Plaintiff.  See Dkt. No. 166 at 1-3.  The court notes this does not constitute an admission by Defendants.

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

1   impaired and uncollectible receivables, Plaintiff alleges that Celera's financial guidance for its

2   2009 revenue and Selling, General and Administrative ("SG&A") expense guidance was also

3   materially false when issued to investors on February 17, 2009 and reiterated on May 6, 2009.

4            Furthermore, Plaintiff alleges that Pricewaterhouse knew Celera was no longer being paid

5   directly by Blue Cross/Blue Shield, but nevertheless failed to account for this significant change in

6   circumstances in violation of Generally Accepted Accounting Standards ("GAAS") and, instead,

7   issued clean audit reports for Celera's FY08 financial statements and for the six-month transitional

8   period ending December 27, 2008.

9            Plaintiff alleges that the fraud continued after Celera disclosed on February 17, 2009 that:

10   (1) its days sale outstanding ("DSO") had increased; (2) its SG&A expenses for calendar 4Q08,

11   which included bad debt expenses, had increased by 34% over the prior year period primarily as a

12   result of the increased allowance for bad debt at BHL; and (3) a $3.7 million increase in Celera's

13   allowance for bad debt over the prior year, causing Celera's stock to drop more than 26%, from a

14   close of $9.34 per share on February 17, 2009 to $6.87 per share on February 18, 2009.  Plaintiff

15   alleges that not only did the disclosure fail to disclose the magnitude of Celera's bad debt

16   problems, the Celera Defendants made additional statements after this disclosure that concealed

17   the extent of Celera's bad debt problem in SEC filings, press releases and during conference calls.

18            The Class Period ends on July 22, 2009, when Celera announced that it would withdraw its

19   2009 guidance and expected to record significant charges ($20.1 million) in 2Q09 for bad debt

20   expense.  On this news, Celera's stock dropped $1.91 per share to close at $5.83 per share on July

21   23, 2009, a one-day decline of nearly 25%.  On March 18, 2011, Celera restated its Class Period

22   financial results, which included a statement indicating that most (82%) of the $20.1 million bad

23   debt charge that was recorded at the end of the Class Period should have been recorded throughout

24   the Class Period; it also stated that during the Class Period, the company misclassified $27.7

25   million of Celera's bad debt expense as an SG&A expense rather than as a reduction of revenue.

26            Plaintiff commenced the instant action on June 14, 2010.  See Dkt. No. 1.  Plaintiff

27   Case No.: 5:10-cv-02604-EJD

3

28   ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
     ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1    subsequently filed a First Amended Complaint in October 2010, and a Second Amended

2    Complaint in May 2011.  See Dkt. Nos. 24, 45.  Defendants filed a motion to dismiss the Second

3    Amended Complaint, which was denied.  See Dkt. No. 65.  In September 2013, Plaintiff sought

4    leave to file a Third Amended Complaint, which the court granted.  See Dkt. No. 110.  Thus, in

5    October 2013, Plaintiff filed its Third Amended Complaint.  See Dkt. No. 112.  As the operative

6    complaint, the Third Amended Complaint asserts the following claims: (1) violation of § 10(b) of

7    the 1934 Act and SEC Rule 10b-5; (2) violation of § 20(a) of the 1934 Act against the Celera

8    Defendants; and (3) violation of § 10(b) of the 1934 Act and SEC Rule 10b-5 against

9    Pricewaterhouse.  See id.

10          In October 2013, Plaintiff filed its motion for class certification, which was unopposed.

11   See Dkt. Nos. 113, 131, 136.  In February 2014, the court granted Plaintiff's motion, and certified

12   the class.  See Dkt. No. 146

13          In November 2013, Pricewaterhouse filed a motion to dismiss Plaintiff's third Amended

14   Complaint.  See Dkt. No. 134.  However, the motion was not resolved because, in May 2014, the

15   parties reached an agreement to settle the case.  The court, therefore, held the pending motion to

16   dismiss in abeyance until a final settlement agreement was executed.  See Dkt. No. 159.  With the

17   assistance of a mediator, the Honorable Layn R. Phillips (ret.), the parties reached an agreement

18   and executed the proposed settlement agreement on August 28, 2014.  See Decl. of Layn R.

19   Phillips ("Phillips Decl."), Dkt. No. 183 at ¶ 6; Stipulation of Settlement ("Settlement

20   Agreement"), Dkt. No. 166.

21          In August 2014, Plaintiff filed a motion for preliminary approval of the class action

22   settlement.  See Dkt. No. 167.  After a hearing held on November 7, 2014, and supplemental

23   information provided by Plaintiff, the court granted preliminary approval.  See Dkt. Nos. 171, 177,

24   179.

25          In April 2015, Plaintiff filed the instant motions seeking final approval of the class action

26   settlement, and attorneys' fees and costs.  See Dkt. Nos. 180, 181.  These motions are unopposed.

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

A hearing on these motions was held on July 16, 2015, and Plaintiff filed supplemental

information in support of its motions.  <u>See</u> Dkt. Nos. 190, 195.

**B.     The Settlement Agreement**

After a full-day mediation and subsequent discussions overseen by mediator Judge

Phillips, the parties reached a settlement agreement executed on August 28, 2014.  The key terms

of the proposed settlement agreement are summarized as follows:

**i.     Class Definition**

As certified, the class is defined as:

> All persons or entities who purchased or otherwise acquired Celera
> common stock from April 24, 2008 through July 22, 2009 (the
> "Class Period") and who were damaged thereby.  Excluded from the
> Class are defendants and their family members, the officers and
> directors of the Company, at all relevant times, members of their
> immediate families and their legal representatives, heirs, successors
> or assigns and any entity in which defendants have or had a
> controlling interest.

Settlement Agreement ¶ 1.5.  The class size consists of approximately 40,828 members.  Dkt. No.

195 at 3.

**ii.     Settlement Fund**

Defendants have agreed to pay a total amount of $24,750,000 into a settlement fund, of

which the Celera Defendants will pay $23,000,000 and Pricewaterhouse will pay $1,750,000.

Settlement Agreement ¶ 2.1.  The Settlement Fund will be used to pay for settlement

administration costs, taxes associated with the fund, and attorneys' fees and costs for Lead

Counsel.  <u>Id.</u> at ¶ 5.2.  The remaining balance, or Net Settlement Fund, will be distributed to

authorized claimants, and no amount will revert to Defendants.  <u>Id.</u> at ¶¶ 5.2, 5.7.

**iii.     Settlement Administration Costs**

The parties agreed that all costs of administering the settlement and providing for notice of

the settlement to the class will be subjected to a cap of $500,000.  <u>Id.</u> at ¶ 2.7.  The parties also

agreed that such amount will be paid without approval from Defendants.  <u>Id.</u>

5

United States District Court
Northern District of California

1

#### iv.    Monetary Relief

The parties agreed that class members seeking monetary relief must submit a completed

claim form within 90 days of the notice mailing date, and the Claims Administrator Gilardi & Co.

LLC ("Claims Administrator") will oversee the distribution of the Net Settlement Fund.  Id. at ¶¶

5.4, 5.6.  According to Plaintiff's supplemental brief, $18,102,879.10 is available for distribution

to the class, and the submitted valid claims represent 17,686,724 shares of Celera common stock.

Dkt. No. 195 at 3.  As such, Plaintiff estimates the distribution to claimants will amount to $1.02

per share.  Id.

#### v.    Attorneys' Fees and Costs

While the Settlement Agreement provides that a portion of the Settlement Fund will be

allocated to Lead Counsel for attorneys' fees and costs, no amount is provided.  Settlement

Agreement ¶ 6.  Plaintiff's submitted Motion for Attorneys' Fees and Costs shows that it seeks

25% of the Settlement Fund, which amounts to $6,187,500, and costs of $222,521.32.  Dkt. No.

181 at 1.

#### vi.    *Cy Pres* Distribution

Any balance remaining in the Net Settlement Fund will be distributed to the Bay Area

Legal Aid ("BALA"), which is a non-profit organization that provides free civil legal services to

the low-income residents of the San Francisco Bay Area.  Settlement Agreement ¶ 5.7; Dkt. No.

177 at 4-5.

#### vii.    Release of Claims

The Settlement Agreement provides that Plaintiff and each class member will release their

claims against Defendants.  Settlement Agreement ¶ 4.  This release applies to all class members,

regardless of whether they submitted a proof of claim or received monetary relief from the

Settlement Fund.  Id.

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1    **II.    LEGAL STANDARD**

2            A class action may not be settled without court approval.  Fed. R. Civ. P. 23(e).  "If the

3    proposal would bind class members, the court may approve it only after a hearing and on finding

4    that it is fair, reasonable, and adequate."  <u>Id</u>.  "[T]he decision to approve or reject a settlement is

5    committed to the sound discretion of the trial judge because he is exposed to the litigants, and their

6    strategies, positions and proof."  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998)

7    (internal quotations omitted).  In assessing overall fairness, the settlement is taken as a whole, thus

8    the court does not "have the ability to delete, modify or substitute certain provisions."  <u>Id</u>. (internal

9    quotations omitted).  "The settlement must stand or fall in its entirety."  <u>Id</u>.  Further, judicial

10   policy "favors settlements, particularly where complex class action litigation is concerned."  <u>Class</u>

11   <u>Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992).

12   **III.    DISCUSSION**

13        **A.    Appropriateness of the Notice Plan**

14         Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances,

15   including individual notice to all members who can be identified through reasonable effort."  Such

16   notice must "clearly and concisely state in plain, easily understood language," the nature of the

17   action, the class definition, and class members' right to exclude themselves from the class, among

18   other things. Fed. R. Civ. P. 23(c)(2)(B).  Further, before granting final approval to a proposed

19   class settlement, the court must "direct notice in a reasonable manner to all class members who

20   would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  While Rule 23 requires that

21   reasonable efforts be made to reach all class members, it does not require that each individual

22   actually receive notice.  <u>Silber v. Mabon</u>, 18 F.3d 1449, 1453-54 (9th Cir. 1994); <u>see also</u> <u>Rannis</u>

23   <u>v. Recchia</u>, 380 Fed. Appx. 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable

24   effort to inform affected class members through individual notice, not receipt of individual

25   notice").

26

27

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    In this case, the court approved the notice, summary notice, and claim form.  Dkt. No. 179

2    at 11.  The court also approved a notice plan in which the notice and claim form (collectively, the

3    "claim package") would be mailed to potential class members and brokers who may be nominee

4    holders, emailed to approximately 450 institutions that monitor securities class actions for their

5    investor clients, and published by the Depository Trust Corporation.  Id.  Further, the court

6    approved the publication of the summary notice in the Investor's Business Daily and the Business

7    Wire, as well as a settlement-specific website.  Id.

8    Since preliminary approval, the Claims Administrator mailed the approved claim package

9    to 40,828 potential class members and nominee holders, and electronically delivered claim

10   packages to 446 registered electronic filers consisting of institutions and third-party filers.  Dkt.

11   No. 196 at ¶ 3; Dkt. No. 184 at ¶¶ 5-6, Exh. A (notice), Exh. B (claim form).  Thereafter, on July

12   24, 2015, the Claims Administrator sent a postcard notifying potential class members and nominee

13   holders that the deadline for filing a claim had been extended from June 28, 2015 to August 14,

14   2015.  Dkt. No. 196 at ¶ 4.  Moreover, the claim package was published by the Depository Trust

15   Company on its Legal Notice System, and on April 9, 2015, the summary notice was published in

16   in Investor's Business Daily and transmitted over the Business Wire.  Dkt. No. 184 at ¶¶ 7, 13.

17   Lastly, a toll-free telephone number and a settlement-specific website were created.  Id. at ¶¶ 11-

18   12.  According to the Claims Administrator, it has received only one request for exclusion and no

19   objections.  Dkt. No. 189 at ¶ 5.

20   Given the information provided by the Claims Administrator, the court again finds that the

21   notice plan and class notices are consistent with Rule 23, and that the plan has been fully and

22   properly implemented by the parties and the Claims Administrator.

23   **B.     Fairness of the Settlement**

24   The court may approve a proposed settlement agreement "only after a fairness hearing and

25   a determination that the settlement taken as a whole is fair, reasonable, and adequate," pursuant to

26   Rule 23(e).  In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 944 (9th Cir. 2015) (internal

27   
28   

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

quotations omitted).  To assess the fairness of the proposed settlement, the court considers eight factors derived from Churchill Village, LLC v. General Electric, 361 F.3d 566, 575 (9th Cir. 2004), also known as the "Churchill factors":

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Online DVD–Rental, 779 F.3d at 944.  Each relevant factor will be addressed in turn.

### i. **Strength of Plaintiff's Case**

In assessing the strength of a plaintiff's case, "there is no particular formula by which the outcome must be tested." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 255 (N.D. Cal. 2015) (internal quotations omitted).  "Rather, the Court's assessment of the likelihood of success is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Id. (internal quotations omitted).  The court "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." Garner v. State Farm Mut. Auto. Ins. Co., No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).

While Plaintiff contends that it would have a meritorious case due to a strong theory of liability, it argues that it would have faced various obstacles. Dkt. No. 180 at 16.  Such obstacles include satisfying the stringent pleading requirements of alleging scienter against an independent auditor—Pricewaterhouse—proving scienter as to Defendants, addressing the defense that the Celera Defendants exercised sound business judgment, and proving that the Celera Defendants recklessly violated GAAP.  Id. at 15-17.  Plaintiff further argues that since the alleged events occurred over six years ago, the ability and willingness of its witnesses to testify at trial would be impaired.  Id. at 17.  On this showing, the court weighs this factor in favor of settlement.

United States District Court
Northern District of California

9

1

### ii.   The Risk, Expense, and Complexity of Continued Litigation

2

"Generally, unless the settlement is clearly inadequate, its acceptance and approval are

3

preferable to lengthy and expensive litigation with uncertain results." Ching v. Siemens Indus.,

4

Inc., No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal

5

quotations omitted).  Immediate receipt of money through settlement, even if lower than what

6

could potentially be achieved through ultimate success on the merits, has value to a class,

7

especially when compared to risky and costly continued litigation.  See LaGarde v. Support.com,

8

Inc., No. C 12-0609 JSC, 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013).

9

Plaintiff contends that even if it were successful in establishing liability, it would face

10

substantial risks in proving loss causation and damages.  Mot. at 18.  For example, Plaintiff

11

anticipates Defendants would argue that the company's stock dropped because of the market's

12

reaction to Celera's guidance for fiscal year 2009 rather than Plaintiff's allegation that the decline

13

was a result of fraud-related disclosures.  Id.  Plaintiff further contends that the amount of damages

14

incurred by class members would be highly contested at trial and would be difficult to prove.  Id.

15

at 19.  The damages assessment from the parties' experts is expected to vary substantially, and

16

would therefore result in a "battle of the experts" at trial.  Id.  Moreover, Plaintiff contends that

17

even if it prevailed at trial, Defendants would very likely file post-trial motions and/or appeals,

18

during which time the class would receive nothing for several years and would run the risk of

19

receiving no recovery at all.  Id.  Plaintiff contends that without settlement, the time and expense

20

of continued litigation would be substantial, and the class would risk receiving no recovery.  Id. at

21

20.

22

The court notes that absent a settlement agreement, Plaintiff would face numerous hurdles

23

in proceeding with litigation, such as summary judgment motions, post-trial motions and appeals,

24

all of which would have delayed recovery for class members.  See Rodriguez v. W. Publ'g Corp.,

25

563 F.3d 948, 966 (9th Cir. 2009).  Given these considerations, this factor weighs in favor of

26

settlement.

27

28

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1

### iii.    The Risk of Maintaining Class Action Status

The court granted class certification on February 25, 2014.  See Dkt. No. 146.  While a class can be decertified, the risk of this occurring is minimal since Defendants did not oppose Plaintiff's motion for class certification.  See Dkt. Nos. 131, 136.  On this front, Plaintiff would not encounter significant risk in pursuing this litigation as a class action.  Therefore, this factor is neutral or weighs marginally against settlement because in the absence of settlement, it is unlikely that the class would be de-certified.

### iv.    The Amount Offered in Settlement

This factor "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class."  Bayat v. Bank of the W., No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015).  Since "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees."  In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178 (9th Cir. 2013).

In this case, Plaintiff contends that the $24,750,000 obtained is significant because it represents 17% of Plaintiff's estimated damages of $143 million, and 82% of the Celera Defendants' estimated damages of $30 million.  Dkt. No. 180 at 11-12.  According to the most recent figures, Plaintiff estimates that a Net Settlement Fund of $18,102,879.10 will be distributed among 17,686,724 shares claimed.  Dkt. No. 195 at 3; Dkt. No. 196 at ¶ 13.  As such, each share will be awarded approximately $1.02.  Id.

In comparing this amount with other securities-fraud related actions in this district, the amount offered in the instant settlement appears to be reasonable.  See In re Zynga Inc. Sec. Litig., No. 12-cv-04007-JSC, 2015 WL 6471171, at *11 (N.D. Cal. Oct. 27, 2015) (granting preliminary approval on a settlement fund of $23 million, and a per-share distribution of $0.11 after deductions for attorneys' fees and costs); In re Apple Inc. Sec. Litig., No. 5:06-cv-05208-JF, 2011 WL

United States District Court
Northern District of California

11

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

1    1877988, at *1, 4 (N.D. Cal. May 17, 2011) (granting final approval on a settlement fund of $16.5

2    million, and a per-share distribution of $1.70).  As such, this factor weighs in favor of settlement.

3               **v.    The Extent of Discovery Completed and the Stage of the Proceedings**

4         "This factor evaluates whether the parties have sufficient information to make an informed

5    decision about settlement."  Larsen v. Trader Joe's Co., No. 11-cv-05188-WHO, 2014 WL

6    3404531, at *5 (N.D. Cal. July 11, 2014) (internal quotations omitted).  "In the context of class

7    action settlements, as long as the parties have sufficient information to make an informed decision

8    about settlement, formal discovery is not a necessary ticket to the bargaining table."

9    Bellinghausen, 306 F.R.D. at 257 (internal quotations omitted).  "Rather, the court's focus is on

10   whether the parties carefully investigated the claims before reaching a resolution."  Id. (internal

11   quotations omitted).

12        Here, Plaintiff states that it consulted with in-house consultants and an expert, conducted

13   an extensive investigation, and obtained over 1.1 million pages of documents, which were

14   reviewed using electronic discovery databases and physical hands-on review.  Dkt. No. 180 at 22.

15   Plaintiff contends that due to the complex accounting aspects of its allegations, Lead Counsel's

16   forensic accounting staff spent considerable time reviewing and analyzing accounting-related

17   documents.  Id.  Lastly, Plaintiff contends that the parties' settlement negotiations were extensive,

18   consisting of an all-day mediation session and exchanging detailed opening mediation statements

19   highlighting the factual and legal issues in dispute.  Id.  Given the extensive discovery conducted

20   by the parties, it appears that Plaintiff had an adequate understanding of the merits of this case

21   before settlement negotiations began.  See Rodriguez, 563 F.3d at 967.  As such, this factor

22   weighs in favor of settlement.

23               **vi.    The Experience and Views of Counsel**

24        As to this factor, "parties represented by competent counsel are better positioned than

25   courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  Id.

26   Consequently, "[t]he recommendations of plaintiffs' counsel should be given a presumption of

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1  reasonableness." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).

2       In this instance, Plaintiff contends that its Lead Counsel has significant experience in

3  securities class action litigation, and has negotiated numerous other class action settlements.  Dkt.

4  No. 180 at 23.  Plaintiff further contends that in order to reach a settlement agreement, Lead

5  Counsel has evaluated the relevant legal authorities and evidence supporting the claims asserted

6  against Defendants, the likelihood of prevailing on these claims, the risk and expense of continued

7  litigation, and likely appeals and subsequent proceedings.  Id.  Since Defendants do not dispute

8  these arguments, and given the absence of information to counter the presumption, Lead Counsel's

9  recommendation seems reasonable.  As such, this factor weighs in favor of settlement.

10              **vii.    The Reaction of Class Members**

11       "It is established that the absence of a large number of objections to a proposed class action

12 settlement raises a strong presumption that the terms of a proposed class settlement action are

13 favorable to the class members." In re Omnivision, 559 F. Supp. 2d at 1043.  Thus, the

14 willingness of the overwhelming majority of the class to approve the offer and remain part of the

15 class "presents at least some objective positive commentary as to its fairness." Hanlon, 150 F.3d

16 at 1027.

17       Here, from a total of 40,828 potential class members, the Claims Administrator received

18 17,955 claims.  Dkt. No. 195 at 3.  Thus, the claim participation rate is approximately 44%, when

19 it is typically between 20% and 30% in securities matters.  Id. at 4; Dkt. No. 196 at ¶ 5.  Given that

20 nearly half of the class participated, only one exclusion was submitted, and no objection was filed,

21 the reaction of the class members is notable.  As such, this factor weighs in favor of settlement.

22       In considering all of the Churchill factors, the court determines that the proposed

23 settlement agreement is fair, reasonable, and adequate.  Accordingly, the court grants final

24 approval of the proposed settlement agreement.

25

26

27
Case No.: 5:10-cv-02604-EJD
28 ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

1    **IV.    ATTORNEYS' FEES AND COSTS**

2          Plaintiff also moves for attorneys' fees and costs on behalf of two law firms: (1) Robbins

3    Geller Rudman & Dowd LLP ("Robbins Firm"), who served as Lead Counsel; and (2) Glancy

4    Binkow & Goldberg LLP ("Glancy Firm") (collectively, "Class Counsel").  Plaintiff requests 25%

5    of the Settlement Fund for attorneys' fees, which amounts to $6,187,500, and $222,521.32 in

6    costs.  Dkt. No. 181 at 1.

7          Under Rule 23(h), "the court may award reasonable attorney's fees and nontaxable costs

8    that are authorized by law or by the parties' agreement."  The court, however, has "an independent

9    obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

10   already agreed to an amount."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th

11   Cir. 2011).  Courts have discretion to award attorneys' fees to a prevailing plaintiff if "the

12   successful litigants have created a common fund for recovery or extended a substantial benefit to

13   the class," as is the case here.  Id.

14         "Where a settlement produces a common fund for the benefit of the entire class, courts

15   have discretion to employ either the lodestar method or the percentage-of-recovery method."  Id.

16   at 942.  Under the percentage-of-recovery method, "courts typically calculate 25% of the fund as

17   the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any

18   'special circumstances' justifying a departure."  Id.  If awarding 25% of the fund yields "windfall

19   profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark

20   percentage or employ the lodestar method instead."  Id.

21         Under the lodestar method, the "lodestar figure is calculated by multiplying the number of

22   hours the prevailing party reasonably expended on the litigation (as supported by adequate

23   documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

24   Id. at 941.  Thereafter, "the court may adjust it upward or downward by an appropriate positive or

25   negative multiplier reflecting a host of 'reasonableness' factors, including the quality of

26   representation, the benefit obtained for the class, the complexity and novelty of the issues

27   Case No.: 5:10-cv-02604-EJD
28   ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
     ATTORNEYS' FEES AND COSTS

*United States District Court*
*Northern District of California*

presented, and the risk of nonpayment." <u>Id</u>. at 941-42 (internal quotations omitted).

The reasonableness of the fee award provided by the percentage-of-recovery method can be cross-checked by the lodestar method.  "[T]he lodestar method can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." <u>Id</u>. at 944-45 (internal quotations omitted).

### A.    Percentage of the Fund

The Ninth Circuit has determined the "benchmark" to be 25% of the common fund.  This percentage, however, can be adjusted upon consideration of the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." <u>Tarlecki v. bebe Stores, Inc.</u>, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Here, Plaintiff seeks 25% of the Settlement Fund, or $6,187,500.  Plaintiff argues that this amount is warranted for various reasons.  First, Class Counsel obtained a significant result, producing a settlement fund of $24,750,000 at a relatively early stage of litigation without the risk and expense of continued litigation. Dkt. No. 181 at 7-8.  Second, the risk of litigation was substantial given the complex legal, accounting, and factual issues arising under federal securities laws. <u>Id</u>. at 9.  Plaintiff faced the risk of obtaining no recovery at all.  <u>Id</u>.  Third, this settlement is the result of Class Counsel's skilled efforts and quality of work.  Through their investigative efforts and analysis, Plaintiff was able to obtain over 1.1 million pages of documents, which positioned Class Counsel to negotiate a favorable settlement.  <u>Id</u>. at 11.  Further, Class Counsel possess substantial experience in prosecuting complex securities class actions, and were able to litigate this action against vigorous defense counsel.  <u>Id</u>.  Fourth, Class Counsel took this case on a contingency fee basis, thus facing the risk of obtaining no recovery for its time and efforts.  <u>Id</u>. at 12-13.  Lastly, a 25% fee award is consistent with those awarded in similar cases.  <u>Id</u>. at 13-14.

Case No.: <u>5:10-cv-02604-EJD</u>
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

The court notes the substantial result achieved for the class, the risks associated with litigating a complex securities class action, and the risk Class Counsel took in litigating this case on a contingency fee basis.  However, the court also observes that, at times, Class Counsel's performance before the court has been less than impressive.  During the preliminary approval stage, Class Counsel failed to provide the court with basic information essential to granting preliminary approval.  Thus, after the hearing, the court issued an order requesting additional basic information from Class Counsel, such as the estimated class size, an itemized listing of how the Settlement Fund would be distributed, an estimated amount per share that claimants would receive, the identity of the *cy pres* recipient, a detailed notice plan, and a "mock-up" of the notice, summary notice, and claim form—all of which a skilled class counsel would have included in Plaintiff's original preliminary approval motion.  See Dkt. No. 174.

Similarly, during the final approval stage, Class Counsel again failed to provide the court with essential information.  Thus, after the hearing, the court issued another interim order requesting the final estimate of the class size, the final number of claim forms received, the final amount per share that will be distributed to the class, the class member participation rate, and Class Counsel's itemized billings.  See Dkt. No. 191.  Again, a skilled class counsel would have provided this necessary information without prompting from the court.

These deficiencies in Class Counsel's performance render an attorneys' fee award of $6 million unjustified.  As such, the court deems it appropriate to reduce the attorneys' fee award to 20% of the Settlement Fund, or $4,950,000.

**B.    Lodestar Comparison**

To "guard against an unreasonable result," the court will cross-check its percentage-of-recovery figure against the lodestar method.  See In re Bluetooth, 654 at 944.  Here, Plaintiff contends that Class Counsel spent 8,952.45 hours of time in this action, resulting in a lodestar amount of $4,593,390.25.  The break-down is as follows:

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

| Law Firm | Position | Hourly Billing Rate | Number of Hours | Lodestar Amount |
|---|---|---|---|---|
| Robbins Geller Rudman & Dowd LLP | Partners | $650 - $880 | 3,036.45 | $2,154,088 |
| | Associates | $380 - $500 | 2,212.30 | $1,041,990 |
| | Of Counsel | $700 - $835 | 71.50 | $54,133.75 |
| | Staff Attorneys | $350 | 595.15 | $208,302.50 |
| | Forensic Accountants | $500 - $625 | 973.7 | $502,318.75 |
| | Economic Analysts | $415 - $430 | 67 | $28,322.50 |
| | Law Clerk | $175 | 428.80 | $75,040 |
| | Paralegals | $265 - $295 | 1,040.85 | $304,155.75 |
| | Document Clerks | $150 | 212.90 | $31,935 |
| Glancy Binkow Goldberg LLP | Partners | $525 - $795 | 296.55 | $188,145.25 |
| | Associate | $425 | 3.75 | $1,593.75 |
| | Paralegals | $200 - $295 | 13.5 | $3,365 |
| **TOTAL** | | | **8,952.45** | **$4,593,390.2** |

See Dkt. No. 185-1, Exh. A; Dkt. No. 186, Exh. A.

    **i.**    **Billing Rates**

When determining a reasonable hourly rate, the court looks at the prevailing market rates in the relevant community, which is the forum in which the district court sits. Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013). In the instant case, the court will consider prevailing market rates in the Bay Area, in the Northern District of California.

Reasonable hourly rates for partners in the Bay Area range from $560 to $800. See In re Magsafe, 2015 WL 428105, at *12 (collecting cases). Here, the following partners are billing at the high end of the range: (1) Jeffrey Light from the Robbins Firm, billing at $800 per hour; (2) Darren Robbins from the Robbins Firm, billing at $880 per hour; and (3) Lionel Z. Glancy from the Glancy Firm, billing at $795 per hour. See Dkt. No. 185-1, Exh. A; Dkt. No. 186, Exh. A. While each of these lawyers have many years of experience, counsel's performance in this case cannot support these billing rates. As such, the billing rates for these partners will be reduced to $710 per hour—the next highest billing rate for a partner at their firm.

17

Case No.: 5:10-cv-02604-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California

1     As for paralegals and litigation support staff, reasonable rates in the Bay Area range from
2   $150 to $240.  See In re Magsafe, 2015 WL 428105, at *12 (collecting cases).  Here, paralegals
3   from the Robbins Firm bill at $265 to $295 per hour; and paralegal Tia Reiss from the Glancy
4   Firm bills at $295 per hour.  Dkt. No. 185-1, Exh. A; Dkt. No. 186-1, Exh. A.  While the court
5   does not doubt these paralegals assisted to a great extent, the billing rate is excessive given the
6   range typically awarded in this district.  As such, their billing rate will be reduced to $240 per
7   hour.

8            ii.     **Number of Hours**

9     "[A] 'reasonable' number of hours equals the number of hours which could reasonably
10  have been billed to a private client."  Gonzalez, 729 F.3d at 1202 (internal quotations omitted).  In
11  evaluating the billing entries, the court can exclude those "hours that are excessive, redundant, or
12  otherwise unnecessary."  Id. at 1203 (internal quotations omitted).  "[W]hen faced with a massive
13  fee application the district court has the authority to make across-the-board percentage cuts either
14  in the number of hours claimed or in the final lodestar figure as a practical means of excluding
15  non-compensable hours from a fee application."  Id. (internal quotations omitted).  If the court
16  imposes an across-the-board reduction of no more than 10%, then no specific explanation is
17  required; however, if the court makes a reduction greater than 10%, then the court must provide a
18  concise and clear explanation for its reasons.  Id.

19          In this case, Class Counsel have lodged their itemized billings with the court.  Upon
20  evaluating these itemized billings, the court finds that various billing entries are excessive,
21  redundant, and duplicative, and will therefore exercise its discretion to reduce the total number of
22  hours claimed by 10%.  Specifically, the itemized billings show that partners, billing at high
23  hourly rates, have spent an exorbitant amount of time drafting complaints and motion briefs,
24  reviewing the docket and other documents, conducting background research and legal research,
25  reviewing Celera's website, corresponding with other counsel, reviewing news reports, preparing
26  and reviewing case management conference statements, and preparing for the preliminary

27                                           18

United States District Court
Northern District of California

approval and final approval hearings.  See Terry v. City of San Diego, 583 Fed. Appx. 786, 790-91 (9th Cir. 2014) (permitting reductions for the following: time counsel spent conferring among themselves, attorney hours devoted to clerical work, and co-counsel editing each other's briefs since that can constitute unreasonable duplicative time).

Furthermore, while the court recognizes that this is a complex securities class action case, staffing a case with a large number of attorneys can result in duplicative efforts and time billed. This case was staffed with eleven partners, collectively billing for 3,333 hours of work, and eight non-partner lawyers, collectively billing for 2,882.7 hours of work.  See Dkt. No. 185-1, Exh.A; Dkt. No. 186-1, Exh. A.  Between August 2009 and April 2015, a total of 19 lawyers worked on this case.  That is unreasonable.

As such, of the 8,952.45 reported as the number of hours spent on this case, the figure will be reduced by 895.24 hours, amounting to a total of 8,057.21 hours.

These adjustments result in the following:

| Law Firm | Position | Average Billing Rate | Number of Hours (including 10% reduction) | Lodestar Amount |
|---|---|---|---|---|
| Robbins Geller Rudman & Dowd LLP | Partners | $693.33 | 2,732.805 | $1,894,735.69 |
| | Associates | $451.67 | 1,991.07 | $899,306.59 |
| | Of Counsel | $767.50 | 64.35 | $49,388.62 |
| | Staff Attorneys | $350 | 535.635 | $187,472.25 |
| | Forensic Accountants | $562.50 | 876.33 | $492,935.62 |
| | Economic Analysts | $422.50 | 60.3 | $25,476.75 |
| | Law Clerk | $175 | 385.92 | $67,536 |
| | Paralegals | $240 | 936.765 | $224,823.60 |
| | Document Clerks | $150 | 191.61 | $28,741.50 |
| Glancy Binkow Goldberg LLP | Partners | $640 | 266.895 | $170,812.80 |
| | Associate | $425 | 3.375 | $1,434.37 |
| | Paralegals | $240 | 12.15 | $2,916 |
| **TOTAL** | | | **8,057.21** | **$4,045,579.79** |

Under the lodestar method, a reasonable attorneys' fee amounts to $4,045,579.79.

19

United States District Court
Northern District of California

United States District Court
Northern District of California

1    While the amount derived from the percentage-of-recovery method is higher than the

2    adjusted lodestar amount, the court deems the percentage-of-recovery amount to be reasonable

3    given the results achieved and the risks faced by Plaintiff and Class Counsel.  See In re HP Inkjet

4    Printer Litig., 716 F.3d 1173, 1190 (9th Cir. 2013) (noting that it is not necessary for the fee award

5    to be equally justifiable under both the lodestar and the percentage methods, or for the percentage

6    method to be precise when used as a cross-check).  Accordingly, an attorneys' fee award of

7    $4,950,000 will be approved.

8    **C.    Attorneys' Costs**

9    Plaintiff also seeks attorneys' costs of $222,521.32.  Dkt. No. 181 at 17.  Such expenses

10   include:

| Law Firm | Expense | Amount |
|---|---|---|
| Robbins Geller Firm | Filing, Witness and Other Fees | $13,053.84 |
| | Class Action Notices/Business Wire | $1,243.75 |
| | Transportation, Hotels & Meals | $7,127.40 |
| | Telephone, Facsimile | $264.07 |
| | Postage | $415.94 |
| | Messenger, Overnight Delivery | $373.22 |
| | Court Hearing and Deposition Reporting, Transcripts | $123.25 |
| | Experts/Consultants/Investigators | $82,030.62 |
| | Photocopies | $7,227.57 |
| | Online Legal and Financial Research | $32,499.42 |
| | Database Management Charges | $37,708.35 |
| | Data Processing/Collection/Production | $885 |
| | Mediation Fees | $35,102.50 |
| Glancy Firm | Research | $159.32 |
| | Telephone | $36.78 |
| | Travel (airfare, auto) | $2,426.57 |
| | Hotel | $1,438.72 |
| | Meals | $225 |
| | Parking | $180 |
| **TOTAL** | | **$222,521.32** |

24   To support these figures, Class Counsel submitted declarations with extensive explanations for

25   these expenses.  See Dkt. No. 185 at ¶¶ 4-6; Dkt. No. 186 at ¶¶ 5-6.  Upon evaluating these

26   expenses, the court finds that an award for attorneys' costs in the amount of $222,521.32 is

20

1    reasonable.

2    **V.     CONCLUSION**

3            Based on the foregoing, the court rules as follows:

4        1.   Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED; and

5        2.   Plaintiff's Motion for Attorneys' Fees and Costs is GRANTED IN PART AND DENIED

6            IN PART.  The court awards $4,950,000 in attorneys' fees, and $222,521.32 in attorneys'

7            costs.

8    Plaintiff shall file a proposed judgment consistent with this order on or before **December 4, 2015**.

9

10           **IT IS SO ORDERED.**

11   Dated: November 20, 2015

12   

13   _____
     EDWARD J. DAVILA
     United States District Judge

27   Case No.: 5:10-cv-02604-EJD
28   ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR
     ATTORNEYS' FEES AND COSTS

United States District Court
Northern District of California